CRABTREE, J.T.C.
This is a local property tax case in which plaintiff seeks review of a judgment of the Hudson County Board of Taxation *130 reducing the 1985 assessment on plaintiffs property located at 125 Nelson Avenue, Jersey City, New Jersey (Block 907, Lot 19). The assessment and the county board judgment were:
Original Assessment County Board Judgment
Land $ 5,800 $ 5,800
Improvements 12,200 8,000
Total $18,000 $13,800
Plaintiff claims to be the victim of a selective or spot assessment and seeks restoration of the 1984 assessment. Defendant’s position is not altogether clear but it is a safe assumption that it seeks restoration of the original assessment for 1985.
The issue presented is whether plaintiff's property, a single-family detached dwelling, was singled out for a selective assessment in violation of the uniformity provisions of the New Jersey Constitution, Art. VIII, § 1, par. 1 and the Equal Protection Clause of the United States Constitution, Amend. XIV, § 1.
Plaintiff purchased the subject property on February 2, 1982 for $51,500. No claim is made that the transaction was not arm’s length. The assessment on the property at that time was $9,600; and that assessment remained through tax year 1984. Defendant’s assessor increased the assessment to $18,000 for tax year 1985. While she acknowledged that she took the 1982 sale price into account she also indicated that she increased the assessments on approximately 2,000 other properties, 1,400 to 1,500 of which had their assessments increased as a result of sales. The 2,000 properties for which assessments were increased were not all single-family residential. Some were apartment complexes, others were commercial, and still others were industrial properties. The assessor testified that she examined new leases as well as sales of all classes of taxable property and increased assessments where she felt increases were warranted. She did not increase assessments on all properties that were sold. She only increased assessments on *131 sold properties where the assessment-to-sale price ratio was below the lower limit of the common level range, i.e., 15% below the average ratio as promulgated annually for defendant municipality by the Director, Division of Taxation. Conversely, she increased assessments on some properties that were not sold.
The assessor has increased assessments periodically from 1970, the year of the last district-wide revaluation, through 1985. Many of the assessment increases took place in 1983, 1984 and 1985, when it became apparent that many properties were assessed well below the average ratio. The increases represent an effort on the assessor’s part to bring the under-assessed properties closer to the average ratio.
Jersey City is representative of large New Jersey municipalities experiencing the active real estate market associated with economic growth. The average ratio for all classes of property declined from 58% in 1981 to 37.95% in 1985.[1]
Plaintiff’s property was assessed for 1985 at 34.95% of the 1982 purchase price. The assessment for 1984 was 18.6% of the 1982 purchase price. The average ratio for Jersey City for 1984 was 44.43% and the lower limit of the common level range was 37.77%.
At all relevant times there were over 36,000 line items of assessable property on Jersey City’s assessment rolls.
The Legislature has provided a remedy for discriminatory assessments popularly known as chapter 123, after the chapter designation of laws enacted in 1973. The legislation, which became effective for tax year 1978 and later years, is now codified as N.J.S.A. 54:51A-6, which declares, in substance, that whenever the ratio of the assessment to the property’s true value, as judicially determined,[2] exceeds the upper limit or falls *132 below the lower limit of the common level range, the assessment shall be revised by application of the average ratio to the adjudicated true value. The term “average ratio” is defined in N.J.S.A. 54:1-35a(a) as the ratio of assessed to true value of real property in a taxing district as promulgated annually by the Director, Division of Taxation for school aid purposes. The common level range is defined in N.J.S.A. 54:1-35a(b) as that range which is plus or minus 15% of the average ratio.
Application of chapter 123 is automatic; and, if warranted by the court’s finding of true value, an assessment may be increased pursuant to the statute whether or not a counterclaim has been filed seeking an increase. Weyerhaeuser Co. v. Closter Bor., 190 N.J.Super. 528, 464 A.2d 1156 (App.Div.1983); Devonshire Develop. Assoc. v. Hackensack, 184 N.J.Super. 371, 2 N.J.Tax 392, 446 A.2d 201 (Tax Ct.1981); Abe Schrader Corp. v. Secaucus, 8 N.J.Tax 390 (Tax Ct.1986). By the same token, a taxpayer need not plead entitlement to discrimination relief pursuant to chapter 123. The assessment will be decreased if warranted by the court’s finding of true value and its relationship to the assessment. Weyerhaeuser v. Closter Bor., supra. See FMC Stores Co. v. Morris Plains Bor., 100 N.J. 418, 430, 495 A.2d 1313 (1985).
The New Jersey Supreme Court has held that chapter 123 is the exclusive remedy for assessment discrimination except for extreme, severe or egregious circumstances or unless the application of chapter 123 still leaves the taxpayer with a confiscatory assessment. Murnick v. Asbury Park, 95 N.J. 452, 463, 471 A.2d 1196 (1984) (citing with approval 525 Realty Holding Co. v. Hasbrouck Heights, 3 N.J.Tax 206 (Tax Ct.1981) and Jefferson House Investment Co. v. Chatham, 4 N.J.Tax 669 (Tax Ct.1982)).
Plaintiff offered no valuation proofs except for her testimony that she purchased the property in question on February 2, 1982 for $51,500. That purchase took place some two and one-half years prior to the assessing date for the year before the court. While the price for which property sells in an *133 arm’s length transaction is often persuasive of its true value in a tax valuation proceeding, it is not conclusive. Hackensack Water Co. v. Div. of Tax Appeals, 2 N.J. 157, 65 A.2d 828 (1949); Niktan Realty Co. v. City of Passaic, 1 N.J.Tax 393 (Tax Ct.1980). In this case the selling price of $51,500 is the only evidence of true value. In addition, given the rapid increase in the values of the generality of properties from plaintiff’s acquisition date of February 2, 1982 until October 1, 1984, the assessing date for the year before the court, as reflected in the declining assessment ratio for the same period, the price plaintiff paid for the property is at the lower end of a valuation range. Even giving plaintiff the benefit of the doubt as to value, the ratio of assessment to the purchase price of $51,500 is 34.95%. This ratio lies comfortably within the corridor which spans the upper and lower limits of the common level range. (The average ratio for defendant municipality for tax year 1985 is 37.95%.). Thus, plaintiff is clearly not entitled to statutory relief from an allegedly discriminatory assessment.
The issue embodied in plaintiff’s contention that she is the victim of a selective assessment in violation of the uniformity provisions of the New Jersey Constitution, Art. VIII, § 1, par. 1 and the Equal Protection Clause of the 14th Amendment to the United States Constitution is thus squarely and inescapably raised. As our own Supreme Court has indicated, equality of treatment in sharing the real property tax burden is a constitutional right. Murnick v. Asbury Park, supra, 95 N.J. at 458, 471 A.2d 1196.
It is appropriate, in addressing plaintiff’s claims, to examine the case law in New Jersey regarding the assessor’s duty.
While the assessor is prohibited from arbitrarily singling out property for an assessment increase, N.J.S.A. 54:4-23 imposes a duty upon the assessor to review assessments annually and to revise them in light of changed valuation factors affecting individual properties. Tri-Terminal Corp. v. Edgewater, 68 N.J. 405, 346 A.2d 396 (1975), cert. den. 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976); Berkley Arms Apartment Corp. v. Hackensack, 6 N.J.Tax 260 (Tax Ct.1983); Frieman v. Ran *134 dolph Tp., 8 N.J.Tax 264 (Tax Ct.1986). As the Supreme Court said in Tri-Terminal:
The law calls for the separate assessment of each parcel annually at its true value on the assessing date ... While practicalities obviously preclude most assessors reviewing every assessment line item every year, ... there should nevertheless be alertness to changed valuation factors peculiarly affecting individual properties in years between revaluations and requiring prompt revision of such assessments in fairness to the particular taxpayer or to the taxing district ... It should be obvious that, absent such attention, the carrying over of assessments each year from one general revaluation to the next is not the proper discharge of the assessor’s function. [68 N.J. at 413-414, 346 A.2d 396]
In addition, the assessor is not precluded from compliance with the statutory mandate of N.J.S.A. 54:4-23 merely because all properties in the taxing district cannot be revalued and reassessed in one year. Tall Timbers, Inc. v. Vernon Tp., 5 N.J.Tax 299 (Tax Ct.1983). Thus, individual properties may be reassessed in the absence of a comprehensive district-wide revaluation upon conversion of an income-producing apartment complex to cooperative apartments, Berkley Arms Apartment Corp. v. Hackensack, supra; upon adoption of vacancy decontrol in a rent-controlled municipality, Freiman v. Randolph Tp., supra; upon a change in zone, Sage v. Bernards Tp., 5 N.J.Tax 52 (Tax Ct.1982); or upon indication of increased market values as reflected in sales Tall Timbers, Inc. v. Vernon Tp., supra (assessments increased on all campsites, not merely the campsites that were sold).
In the case before the court the assessor’s actions are those of a conscientious, competent professional devoted to a meticulous performance of her statutory and constitutional duties. All her actions in this case bespeak persistent and, in some respects, Sisyphean efforts to maintain some measure of equality among the 36,000 line items on the city’s tax rolls in a period of rapidly changing property values. No assessments were arbitrarily increased. To the contrary, the assessor’s credible testimony shows that she was vigilant and alert with respect to changed valuation factors and revised assessments accordingly. While she certainly took sales into account, the assessment increases were not exclusively based upon sales. She periodically reviewed assessments between 1970, the last *135 revaluation year, and 1985, the year of the change in plaintiff’s assessment. Her efforts were increased in 1983 and 1984 when it became clear to her that many properties were assessed substantially below the average ratio. Assessment increases were not confined to single-family residential properties; they were applied to apartments and industrial and commercial properties as well. Assessors must strive for uniformity of treatment of all properties in their districts. To that end they should be encouraged to review and revise assessments as frequently as occasions demand and as financial and personnel resources permit. The “vice of unequal treatment will persist so long as the assessor fails to do his job.” In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 32-33, 166 A.2d 763 (1961).
I conclude, on the basis of the foregoing analysis, that plaintiff has failed to prove, by a preponderance of the evidence, that she is entitled to relief beyond the statutory remedy provided by chapter 123. She has not established that the assessment on her property is confiscatory, nor that it was attended by severe, extreme or egregious circumstances. Indeed, the overwhelming weight of the credible evidence, specifically, the testimony of the assessor, is to the contrary.
Judgment will be entered restoring the original 1985 assessment, to wit:
Land $ 5,800
Improvements 12,200
Total $18,000

Declining ratios indicate increases in property values, as reflected in sales.

The same rule applies to proceedings before the county boards. N.J.S.A. 54:3-22.