235 N.J. Super. 1 (1989)
561 A.2d 607
TOWNSHIP OF WEST MILFORD, PLAINTIFF-RESPONDENT,
v.
GERALD AND JUANITA VAN DECKER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1989.
Decided June 21, 1989.
*3 Before Judges PETRELLA, SHEBELL and LANDAU.
Juanita Van Decker, pro se, argued the cause for appellants.
Jacquelin P. Gioioso argued the cause for respondent (Edward J. Buzak and Jacquelin P. Gioioso, Special Counsel to *4 the Township of West Milford, attorneys; Jacquelin P. Gioioso, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
This appeal addresses a recurrent problem regarding the validity of reassessment of real property by tax assessors on sale or transfer in the absence of a district-wide revaluation. At issue are the restrictions imposed by the State and Federal Constitutions and case law.
Plaintiffs Gerald and Juanita Van Decker purchased a small one-family dwelling with a detached one car garage on about one-quarter acre of sloping land near the water at Greenwood Lake in the Township of West Milford, Passaic County on November 2, 1984 for $112,000. Based on their purchase, the Township of West Milford tax assessor increased the assessment on the Van Decker property (listed on the tax maps as block 210, lots 11 and 12) for the tax year 1985 from $31,900 to $44,000. The Van Deckers appealed their increased assessment to the Passaic County Tax Board (Tax Board), which rendered a judgment for the property owners and reinstated the original assessment.[1] West Milford appealed the Tax Board's judgment to the Tax Court.[2] After a hearing as a small claims matter, judgment was entered by the Tax Court Judge on May 19, 1988 *5 reversing the Tax Board's judgment for the tax year 1985 and reinstating the increased assessment.[3]
This appeal requires that we address important tax issues touching on spot assessments and constitutional questions which we recently discussed, but were not required to decide, in Schwam v. Township of Cedar Grove, 228 N.J. Super. 522, 527-528 (App.Div. 1988), certif. den. 115 N.J. 76 (1989), and Inwood Owners v. Little Falls, 216 N.J. Super. 485, 493-494 (App.Div. 1987), certif. den. 108 N.J. 184 (1987).
The Van Deckers argue that the record establishes discriminatory taxation in violation of the uniformity clause of our State Constitution and of the equal protection clause of the Federal Constitution, and that the discriminatory treatment was intentional and systematic. They point out that since state law (N.J.S.A. 54:4-23) requires that all real property be assessed to the person owning it on October 1 of the preceding tax year, the assessor improperly utilized their November 1984 purchase to single out their property for reassessment in 1985. Moreover, the Van Deckers argue that the Tax Court Judge failed to give weight to the presumption of correctness of the County Tax Board judgment, and that his rulings and intervention at trial prevented them from probing the propriety of the assessor's valuation and assessing methods. Although not raised below, the Van Deckers further claim that there was a violation of their rights under the federal Civil Rights Act, 42 U.S.C.A. § 1983.
Numerous documents and exhibits were introduced at trial bearing on the assessing practices in West Milford since the previous revaluation, effective in 1970. Many summaries or abstracts of tax documents were presented. Curiously, although *6 demanded and promised, the municipality never produced the actual property record cards for most of the properties in block 210, the block in which the Van Decker property is located.
The last district-wide revaluation in West Milford was conducted in 1969 and took effect in 1970. In 1985 there were approximately 12,200 line items on the assessment rolls, including approximately 8,000 primarily single-family dwellings (class two properties), 3,900 parcels of vacant land (class one properties), and the remainder were multi-family residential, commercial and industrial (class four properties), and farm properties. The evidence disclosed, and the judge found, that for the 1985 tax year, which was involved in the trial, the assessor changed 751 assessments, of which 347 changes, including the Van Decker property, were attributable to sales. Changes resulting from added assessments accounted for 213 changes, and the "remaining changes arose from other circumstances not relevant to this proceeding."
At the time the Van Deckers acquired their single-family residence in West Milford on November 2, 1984 for $112,000 their property was assessed for $31,900. Although the effective West Milford tax rate decreased in 1985, the Van Deckers' property tax increased sharply for that year despite the fact that the property had not physically changed. Based on their purchase the tax assessor adjusted the sales price to a valuation of $110,300, to which she applied a ratio[4] of 39.89% as the *7 average ratio, and obtained an assessment value of $44,000. The assessor raised the assessment value of all the properties sold in 1984 where the value was less than the approximate 40% average ratio. It turned out that this produced an increase for all of the 347 sales. Here, since the prior assessment had been $31,900, and the figure derived by applying the ratio to the adjusted sales price was $44,000, the assessment was raised to the latter figure. A similar approach was applied to the other sold properties, but the percentage applied varied slightly depending upon when in the tax year the property was sold. The result was that while many neighbors experienced property tax reductions, the Van Deckers' taxes increased from $2,029.88 in 1984 to $2,341.46 for 1985.
It was proven, and found by the Tax Court Judge, that the West Milford tax assessor had increased tax assessments for each of the 347 taxpayers who had acquired properties in the township in 1984, including the Van Deckers. However, in 1985 neighbors and others who owned real property in the township prior to 1984 were unaffected by these changes, except that their property taxes were lowered. As a result, increased property taxes were paid to the municipality by its newest property owners.
The Van Deckers challenged the assessor's actions as unfair, and appealed to the Passaic County Tax Board. That board reversed the tax assessor's revaluation of the Van Deckers' property, presumably based on a recognition of the proscription against discriminatory procedures, and reinstated the prior assessment. West Milford then appealed the Tax Board's judgment to the Tax Court. It essentially argued, apparently in *8 reliance on Quinn v. Jersey City, 9 N.J. Tax 128, 135 (Tax Ct. 1987), which we discuss later, that even if the assessing procedure was improper, as long as the assessment fell within the protective range of Chapter 123, N.J.S.A. 54:51A-6, it could not be changed unless the taxpayer could show that the assessment was confiscatory or that "severe, extreme or egregious circumstances" existed. We disapprove of Quinn to the extent it appears to authorize selective increases in assessments for only those properties in a class which had been subject to recent sales.
Here, the Tax Judge's opinion[5] considered the issues in the case before him as "the true value of the subject property and whether the original assessment is a discriminatory `spot' or selective assessment in violation of the uniformity clause of the New Jersey Constitution, Article VIII, § 1, par. 1, and the equal protection clause of the United States Constitution, Amendment XIV, § 1."
At the Tax Court hearing the testimony of the tax assessor who had been in office when the challenged assessment was made was at best unclear. She was the municipality's only witness in its appeal from the Tax Board judgment. Indeed, the Tax Court Judge, in finding that the true value of the subject property on the October 1, 1984 assessing date was $110,300 (adjusted for time), reversed the Tax Board and sustained the assessor, stating: "The assessor's testimony on her assessing practices was frequently unresponsive and shrouded in murky euphemisms." The Tax Court Judge nonetheless found credible her valuation testimony, which "was not severely challenged." The judge generally ruled against plaintiffs on proffers of testimony or documents to establish "some kind of *9 invidious distinction between the assessment on [the Van Decker] property and the assessment on" various other properties.[6]
As the Tax Court Judge noted, there was no real issue of true value of the property in the appeal. Based on the property's value he found that the ratio of this property's assessed value to its true value fell "well within the common level range," and he found no discrimination by limiting the appeal to the Chapter 123 remedy. The judge concluded:
... [S]he [the assessor] in fact changed assessment on some properties as a direct result of sales. More specifically, the increased assessment on defendant's [Van Decker] property was directly attributable to defendant's purchase one month after the assessing date for tax year 1985. The assessor did not single out defendant's property for an increase. Rather she increased 346 other assessments as a result of sales of the assessed properties. She justified the increase in each case on the basis that the ratio of assessed to true value as indicated by the sale price was below the lower end of the common level range as determined by the Director, Division of Taxation pursuant to ch. 123. She increased the assessment for each of the 347 properties by application of the Director's ratio (or a slightly lower percentage) to the adjusted sale price. In the case of the subject property she applied a ratio of 39.89% to the adjusted sale price of $110,300 to arrive at the assessment of $44,000.
The judge thus mistakenly created an unauthorized and a prohibited class in the taxing district consisting only of those class two properties which had been sold. Essentially, a small group of class two taxpayers was singled out for reassessment while other properties in the class were not reassessed. Nor were such properties confined to a single or sufficiently definable area in the township. They were randomly located. In concluding that discrimination had not been shown under Chapter *10 123 (N.J.S.A. 54:51A-6), the judge relied on his earlier decision in Quinn, the decision in Murnick v. Asbury Park, 95 N.J. 452 (1984), and his own opinion in Schwam v. Twp. of Cedar Grove, 9 N.J. Tax 406 (Tax Court 1987), which we affirmed at 228 N.J. Super. 522 (App.Div. 1988), certif. den. 115 N.J. 76 (1989). Although we affirmed Schwam, we there cautioned against valuations based on the transfer of a single property or merely those properties that were transferred. 228 N.J. Super. at 528. We do not consider Frieman v. Randolph Township, 216 N.J. Super. 507 (1987), app. dismissed as improvidently granted 110 N.J. 294 (1988), which involved a different situation, as being to the contrary.
A selective or spot assessment has been universally condemned in theory. Such an assessment is violative of the uniformity provision of the New Jersey Constitution, N.J. Const. (1947), Art. VIII, § 1, para. 1, and the equal protection provision of the Federal Constitution. Selective assessments occur when one taxpayer or a small group of taxpayers in a permissible class are singled out for reassessment when other property in the class is not reassessed. See Schwam v. Twp. of Cedar Grove, supra, 228 N.J. Super. at 528; Picerne v. DiPrete, 428 A.2d 1074, 1077 (R.I. 1981); Thorpe v. Benham, 161 Ga. App. 116, 289 S.E.2d 275 (Ct.App. 1982). Thus, the Tax Court Judge's reliance on the fact that other residential property owners who purchased property were also revalued along with the Van Deckers does not justify such a selective group within class two property owners. What occurred here is certainly distinguishable from situations where a comprehensive district-wide revaluation, or even such a revaluation by classes, takes place over several years pursuant to a well-organized multi-year plan. See Ernest W. Hahn, Inc. v. County Assessors for Bernalillo County, 92 N.M. 609, 592 P.2d 965 (1978); Penn Phillips Lands, Inc. v. State Tax Commission, 247 Or. 380, 430 P.2d 349 (1967). See also Essex County Board of Taxation v. Newark, 73 N.J. 69, 72 (1977); Tri-Terminal Corp. v. Bor. of Edgewater, 68 N.J. 405, 410-411 (1975), *11 cert. den. 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976). Even if the tax assessor had acted from honest motives or beliefs that his or her conduct was appropriate, this will not render the actions less vulnerable to attack as discriminatory. Xerox Corp. v. Ada Cty. Assessor, 101 Idaho 138, 609 P.2d 1129 (1980); Maricopa County v. North Central Development Co., 115 Ariz. 540, 566 P.2d 688 (Ct.App. 1977).
Particularly in view of constitutional mandates, the Chapter 123 ratio is not, and cannot be, the only test of an adjusted assessment when there is no evidence that a common level did not exist in the taxing district. Certainly, the failure to apply a common level where it exists would be a violation of the equal protection clause. See Allegheny Pittsburgh Coal Company v. County Commission of Webster County, ___ U.S. ___, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989); Hillsborough Township v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946); Baldwin Construction Co. v. Essex County Board of Taxation, 16 N.J. 329 (1954); In re Appeal of Kents, etc., 34 N.J. 21 (1961).
As noted, in West Milford the Chapter 123 average ratio for 1985 was 41.46%, and the assessment protection range was thus 35.24% to 47.68%. However, studies published by the Director of the Division of Taxation (Director), covering a sample 12-month period ending on June 30, 1985, indicated that the average ratio in the township from 469 residential sales[7] was 32.93%. We may take judicial notice of these studies, see Evid.R. 9, particularly since this was a small claims tax appeal. Nevertheless, in reaching our decision here we do not rely on the Director's studies.[8] Use of selective increases in tax assessments *12 by the singling out of one or more members of a class of taxpayers for selective assessment increases, while assessments of other property owners are merely carried forward, states the obvious. If one assumed that all properties sold at the same appreciated rate, the selective increases in assessments would result in increasing the disparity between the properties that had been sold and the properties in the municipality which had not been sold.
In our view, it is palpably clear not only from the record, but from the assessor's testimony and indeed the Tax Court Judge's findings, that (exclusive of added assessments for construction and additions and nonusable transfers) current sales were in actuality the only criteria utilized by the assessor in selecting properties for increased assessments for the 1985 tax year. The result was the creation of a disparate group within a class. The record hardly indicates that the properties which had been sold in 1985 were the only ones in the municipality that had appreciated in value that year or from past years.[9] It would strain credulity to accept the proposition that of the approximately 8,000 class two properties in West Milford only the 347 properties which had sold in 1984 had increased in value, not taking into account construction or building changes. According to the evidence, properties adjoining that of the Van Deckers, many of which were larger houses on larger lots, had not had their assessments raised for a number of years. In light of the inflationary trends, which we may judicially notice, it would certainly be contrary to common sense and logic, and a total fiction, to maintain that their values were unchanged. However, according to what the West Milford assessor did, or failed to do, that would have to be the conclusion.
The Tax Board supervises and controls assessment practices and procedures. N.J.S.A. 54:3-11 et seq. In this function the *13 Tax Board and the township assessor are supposed to be aided by the Handbook for New Jersey Assessors, which states in § 903.3:

Adjustment of assessments. Once the assessor has determined that the assessments do not reflect equitably the value of property throughout the taxing district, he is faced with the problem of what to do about it. If the variations are very large, or if there are substantial variations with no obvious pattern of property value trends, the best course probably will be to recommend to the municipal governing body that a complete revaluation of the taxing district be authorized. On the other hand, if it appears that assessments in one portion of the taxing district are generally too high or too low, the assessor may be able to make adjustments which will bring them into line with the assessments of the other properties. In making such adjustments, it is essential that they be applied on an area wide basis. Some assessors have made the mistake of changing assessments only on properties which have been sold. This is a very undesirable practice, for it discriminates against certain property owners. The use of such procedure will quickly turn a good assessment list into a bad one. (Emphasis added).
This is consistent with Tri-Terminal Corp. v. Edgewater, supra, 68 N.J. 405, which implicitly recognized the impropriety of increasing assessments for a portion of a class of properties without addressing the remainder. The phrase "alertness to changed valuation factors" (id. at 414), is meant to require the tax assessor to keep abreast of what is happening so that a revaluation can be undertaken when necessary or so that inequities can be corrected when disclosed. It is not a warrant for the assessor to make selective increases for given properties based solely on the sales price of such properties while leaving static all other assessments.
As we noted in Schwam v. Twp. of Cedar Grove, supra, 228 N.J. Super. at 528:
Although it is thus not necessary to decide the spot assessment issue in this case, we note that assessors are prohibited from arbitrarily singling out property for increased assessment. Berkley Arms Apartment Corp. v. Hackensack, 6 N.J. Tax 260, 267 (Tax Ct. 1983); see Tall Timbers, Inc. v. Vernon Tp., 5 N.J. Tax 299, 310 (Tax Ct. 1983). On the other hand, assessors do have a statutory obligation to monitor all available indicia of property value[3] and to correct inequities in tax years other than years of district-wide revaluations. N.J.S.A. 54:4-23.
This is not to say, however, that in situations not involving condominium conversions the mere recording of a deed and receipt by the tax assessor of an *14 abstract of title warrants new individual assessments limited to that property (to the exclusion of comparable properties at lower assessments) as opposed to general revaluation. Such action may very well run afoul of Baldwin and constitutional provisions if equality means relative equality to other properties, notwithstanding the present availability of the Chapter 123 remedy. See In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 28 (1961), where former Chief Justice Weintraub stated: `Nothing short of complete revaluation, parcel by parcel, plus appropriate measures to keep the rolls current can achieve equality.'
[3] Where recent market values show a general increase in value, it may be that the tax assessor should be alerted to the need of a general revaluation.
In Inwood Owners v. Little Falls Township, 216 N.J. Super. 485, 493-494 (App.Div. 1987), certif. den. 108 N.J. 184 (1987), we made the following anticipatory observation of the issue now before us:
We also note that as a general principle, equality of treatment in sharing the duty to pay real estate taxes is a constitutional right. Murnick v. Asbury Park, 95 N.J. 452, 458 (1984); Tri-Terminal Corp. v. Bor. of Edgewater, 68 N.J. 405, 409-410 (1975), cert. den. 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976). And see Atrium Development Corp. v. Continental Plaza Corp., 214 N.J. Super. 639 (App.Div. 1987). Nor do we quarrel with the general proposition that the tax assessor should, within the constitutional and statutory framework, be diligent in reviewing all assessments as required by statue. N.J.S.A. 54:4-23; Tri-Terminal Corp. v. Edgewater, supra, 68 N.J. at 413-414 (referring to requirement of law for `separate assessment of each parcel annually at its true value on the assessing date'). Cf. Tall Timbers, Inc. v. Vernon Tp., 5 N.J. Tax 299 (Tax Ct. 1983). Such review is required to be on a fair and uniform basis, however. As the Court noted in Tri-Terminal: `It is fundamental that a taxpayer is entitled to "treatment commensurate with that given his fellow taxpayers within the municipality" and that if it is not accorded, he is entitled to a judicial or quasi-judicial remedy.' (68 N.J. at 409.) Here the tax assessor was attempting to use the omitted assessment procedure to improperly single out the taxpayer for reassessment based merely on a sale, without proof of any omission from the tax rolls, and where there had been no physical changes or alterations to the property. Cf. Troy Village Realty Co. v. Springfield Tp., 191 N.J. Super. 559 (App.Div. 1983). Such an individualized reassessment could be construed as a prohibited `spot assessment'. See Baldwin Const. Co. v. Essex Cty. Bd. of Taxation, 16 N.J. 329, 338-339 (1954). Cf. Ocean Pines Ltd. v. Borough of Point Pleasant, 213 N.J. Super. 351, 353 (App.Div. 1986), certif. granted, 107 N.J. 112 (1987).
Here, West Milford relies on Quinn v. Jersey City, supra, 9 N.J. Tax 128, which held that increases in assessments by the Jersey City tax assessor were properly accomplished by reliance on sales of property and that the Chapter 123 ratio was *15 automatic, and the exclusive remedy for assessment discrimination, except for "extreme, severe or egregious circumstances," or unless Chapter 123's application left the taxpayer with a confiscatory assessment. Id. at 135. We disagree with and overrule that conclusion in Quinn. Contrary to West Milford's position, Murnick v. Asbury Park, supra, 95 N.J. at 463 does not stand for the proposition that Chapter 123 precludes either the Tax Board or the Tax Court from providing a remedy for spot assessments. To so hold would put Murnick at odds with seminal constitutional cases holding that property taxation must be at the common level prevailing in the taxing district and not violative of equal protection principles. In our view, Murnick never intended to apply Chapter 123 to overturn the constitutional underpinnings of cases such as Hillsborough Township of Somerset County v. Cromwell, supra, 326 U.S. 620, 66 S.Ct. 445; Baldwin Construction Co. v. Essex County Board of Taxation, supra, 16 N.J. 329; In re Appeal of Kents, etc., supra, 34 N.J. 21. Indeed, the recent decision of the United States Supreme Court in Allegheny Pittsburgh Coal Company v. County Commission of Webster County, supra, ___ U.S. ___, 109 S.Ct. 633, buttresses those cases and also makes it abundantly clear that a taxpayer, or small group of taxpayers, singled out for increased assessment is not limited to the remedy of bringing suit to force other properties to be brought up to the proper assessment level.
Nor is the Chapter 123 ratio, with its assessment protection provisions, automatically applicable to situations where the Tax Board has reversed an assessor's assessment. On an appeal by a municipality from the Tax Board, the taxing district has the burden of proof not only of market value, but of the absence of a common level to trigger provisions of Chapter 123. Judgments of the county tax boards are presumptively correct and the township has the burden of proving them incorrect. Pantasote Co. v. Passaic City, 100 N.J. 408, 412-413 (1985); Riverview Gardens v. North Arlington Borough, 9 N.J. 167 (1952). The taxing district must also prove that the Tax *16 Board's judgment was at a ratio which was not justified by the general assessment ratios prevailing in the taxing district. This it failed to establish. The opposite appears to be the case from the record of this appeal. We conclude that in order for Chapter 123 to be implicated the taxing district must establish that there was no common level, and that the county board judgment was at a ratio which could not be justified within the confines of the assessment ratios of the taxing district. Indeed, it is somewhat anomalous that in challenging the Tax Board's judgment the taxing district is essentially attempting to utilize Chapter 123 to reverse the Tax Board's administrative review function based on an absence of a common level due to the taxing district's own inaction in keeping current the general assessment ratios prevailing in the district.
A brief review of the history of discrimination relief is warranted in light of the Tax Court's mistaken reliance on the impact of Chapter 123 on this tax appeal. Chapter 123 became effective for the tax year 1978 and has been referred to as the Legislature's response to In re Appeal of Kents, etc., supra, 34 N.J. 21. See Murnick v. Asbury Park, supra, 95 N.J. at 460. Initially, Chapter 123 used the Director's one year, unweighted ratio as its standard for a statutory ratio. As a result of an amendment, beginning in 1979 the ratio became the most recent weighted average ratio established by the Director. Chapter 123 requires it to then be averaged with the preceding year's computed ratio. A challenge to the constitutionality of Chapter 123 was upheld in Murnick where there was no common level (95 N.J. at 456) and the issues involved the constitutionality of Chapter 123 and whether the Tax Court was required to follow the statute if it was concluded that the taxpayer did not have an adequate remedy where there was no common level. Murnick held that Chapter 123 was mandatory and established a rebuttable presumption. In disagreeing with the Appellate Division's holding that Chapter 123 was exclusive, the Supreme Court said that stability in tax assessments was a goal that could not override a taxpayer's constitutional right to substantially *17 equal treatment at the hands of an assessor. The Supreme Court held it was not exclusive:
... Although we agree with the importance of stability in tax assessments, that goal may not override the constitutional right of a taxpayer to substantially equal treatment at the hands of a tax assessor.
As a matter of statutory construction, we disagree with the Appellate Division's interpretation of N.J.S.A. 54:2-40.4(a). The words `whenever' and `shall' do not signify that the statute provides the sole discrimination remedy in satisfaction of a taxpayer's constitutional right to relief. Rather, `whenever' and `shall' merely connote that a taxpayer, having invoked the statute, must satisfy the statutory requirement to establish a right to relief. [95 N.J. at 461-462].
Although Murnick appeared to restrict circumstances for the use of another presumptive ratio, 95 N.J. at 463, when read in its entirety and considered with prior judicial opinions, as well as the recent United States Supreme Court decision in Allegheny Pittsburgh Coal, we determine that Murnick's admonition against nonuse applies only where there is no actual common level of assessment,[10] and where a constitutional right is not impaired. Common level in this context means a ratio to, or percentage of, true value at which property is generally assessed in the taxing district. See In re Appeal of Kents, supra, 34 N.J. at 26.
Furthermore, as early as 1946 the United States Supreme Court in Hillsborough Township, etc. v. Cromwell, supra, 326 U.S. 620, 66 S.Ct. 445, overturned then prevailing New Jersey law which had restricted taxpayers' remedies for discriminatory assessments to seeking upward revisions of taxes of other members of the affected class. In rejecting New Jersey's approach it stated:
The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment. He may not complain if equality is achieved by increasing the same taxes of other members of the class to the level of his own. The constitutional requirement, however, is not satisfied if a State does not *18 itself remove the discrimination, but imposes on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class. [Citations omitted]. [326 U.S. at 623, 66 S.Ct. at 448].
The so-called uniformity provision of our State Constitution provides in Article VIII, § 1, par. 1:
.... All real property assessed and taxed locally or by the state for allotment and payment to taxing districts shall be assessed according to the same standard of value, except ... [farmland] ..., and such real property shall be taxed at the general tax rate....
Our Supreme Court in 1954 clearly recognized the requirement for equal treatment under the New Jersey Constitution, as well as pursuant to the Federal Constitution, and in Baldwin Construction Co. v. Essex County Board of Taxation, supra, 16 N.J. at 329, directed that assessments which had been arbitrarily increased by the county tax board be reduced to accord with the uniform rate or measure applied to other properties in the taxing district. Subsequently, In re Appeal of Kents, etc., supra, 34 N.J. 21, reviewed then prevalent assessing procedures in this state. Kents held that where there was no common level of assessment, and taxpayers acknowledged that their properties were assessed at less than full true value, nevertheless, when their assessments exceeded the appropriate ratio of assessment to true value in the taxing district, relief could be obtained by use of an average ratio computed from studies by the State Director of Taxation. The average ratio could be shown as evidence of a ratio to which an assessment could be reduced to effect tax equality if the assessment had substantially exceeded that ratio. Kents also discussed the requirements for equal taxation of real property:
Rather the equal protection clause condemns intentional, invidious treatment within a class the state law has created. Our duty, however, is not limited to enforcement of the Federal Constitution. We are bound as well to enforce both our State Constitution and our State statutes, and a taxpayer may of right call upon us to honor that obligation. Hence relief should be granted upon a showing which satisfactorily reveals unequal treatment in violation of State law and a reasonable basis for compensating for the wrong, whether the wrong be visited invidiously or be the aftermath of a failure to comply with the law. [34 N.J. at 28-29].
*19 The Kents Court recognized that both the average ratio and the general ratio of the county board were primarily intended to address inter-municipal inequalities. It confronted the use of the average ratio to deal with intra-municipal inequality problems where there had been essentially no efforts over the years to do anything more in the municipality than recopy the assessment rolls. The Court observed that if sales data used to compute a ratio revealed some percentage of true value, around which the bulk of individual assessments gravitated, that percentage might be an acceptable common level of assessments. However, the underlying sales in that case revealed no such common level, but instead, widely varying assessment ratios within the various classes of property. Hence, a complete revaluation was required.
The Court in Willingboro Township v. Burlington County Board of Taxation, 62 N.J. 203 (1973), reviewed a formula which used the Taxation Director's weighted ratio for the two year sampling period ending three months before the assessment date. That formula was used to compute a ratio for non-revalued taxing districts while using a 100% ratio for revalued taxing districts. The result was that non-revalued districts were receiving the advantage of calculations based upon substantially lower average sale prices occurring during the remote sales-sampling period. Consequently, there was a relatively lower ratio for a revaluing district than for a non-revalued district. The methodology was disapproved because the distortion improperly increased the county tax burden of revalued districts.[11]
*20 Chapter 123 resulted from a need to grant relief to taxpayers in districts where there was no common level and there was a need for a constitutional remedy. Murnick v. Asbury Park, supra, 95 N.J. at 459-460. It was not intended as a protective range for affirmative assessing practices by an assessor which would effectively preclude a reviewing tax board or Tax Court from affording a remedy or correcting assessments where a common level existed. Our reading of Murnick shows no conflict with the principles in Baldwin, Willingboro and Kents, or indeed even Hillsborough.
Murnick recognized equality of treatment with regard to real estate taxes and stated that if the assessment ratio applied to a parcel substantially exceeded the assessment ratio generally applied in the district, a taxpayer had a right to seek relief. As Murnick acknowledged, mathematical precision was not required and not every deviation was of constitutional dimension:
If a taxing district assesses property at true value or some percentage of true value, often described as a `common level of assessment,' a determination of discrimination is comparatively simple. A comparison of the actual assessment with the common level of assessment discloses whether the tax burden on a particular lot exceeds that generally allocated to real property in the taxing district. [95 N.J. at 459].
Murnick considered that a proper reading of Chapter 123 required establishing a rebuttable presumption of a common level assessment and that this was consistent with the purpose of the statute to relieve the taxpayer's burden of proof:
Nonetheless, to the extent that a taxpayer relies on a presumptive ratio to establish a common level of assessment, we find that the Legislature intended to restrict the taxpayer to the Director's average ratio determined under Chapter 123. In the absence of additional proof, a taxpayer may not substitute another statutory ratio, such as that computed under N.J.S.A. 54:1-35.1. [95 N.J. at 463].
Thus, Murnick was concerned with a situation where there was no common level, recognizing the need to maintain Chapter 123's integrity in such a case. Indeed, much of the language *21 relied upon by Murnick from other Tax Court cases dealt with situations where there were no common levels.
We recognize that full and total equality of valuation of all properties, and at all times, may be an elusive and perhaps illusory concept. Indeed, revaluations are often out of date shortly after they are completed. However, relative equality between all taxpayers of a class within a taxing district is the desirable end to be pursued on an intra-municipal level. Full value would not be necessary, except for the disparities that arise between taxing districts within the county, i.e., inter-municipal disparity. The result of such disparity tends to place a greater burden on certain municipalities with respect to the county portion of the real estate property tax bill. The goal thus is relative uniformity.
There are inherent flaws in the assessment practices, including the often intuitive valuation process; the somewhat archaic nature of the record-keeping in use; and the difficulty of proving inaccurate assessments when property is assessed at an unknown percentage (at least to the average taxpayer) of its adjusted market value. See Comment, Hellerstein v. Assessor of the Town of Islip: "A Response To Inequities In Real Property Assessments In New York," 27 Syracuse Law Review, 1045 (1976). That comment discusses a concept known as the "welcome stranger" approach which has been used as a tool by assessors and taxing districts to increase the tax base, without unduly arousing the citizenry at large, such as occurs when there are general revaluations. The cited Comment highlights this aspect of the problem:
A related flaw of the system which also affects inter-class equity is known as the `welcome stranger' pattern. It occurs when some parcels turn over rapidly while others remain in the same ownership for a long period of time. Since property is generally assessed at the time of its acquisition and is reassessed, if at all, only after a long period of time, those newly-acquired parcels, although they may be equivalent in value to the long-held parcels, are assessed for a higher amount due to appreciation of land values. The `new' owner  the `stranger'  will pay higher taxes proportionately than the owner of a long-held parcel who `welcomes' the fact that he consequently pays lower taxes. If, as was suggested by the Hellerstein court, a fractional assessment system enables *22 a taxing unit to increase revenues without raising the tax rate simply by tampering with the tax base and raising the fraction of assessments, it is conceivable that this `tampering' combined with the infrequent reassessment of property has resulted in even greater disparities between the newly-acquired and the long-held parcels. [Footnotes omitted]. [27 Syracuse L.Rev. at 1061].
We are satisfied from the record in the proceedings below that what occurred with respect to the Van Decker property was a prohibited "spot assessment" in violation of the uniformity clause of our State Constitution and of the equal protection clause of the Federal Constitution. There is no justification for separately classifying new homeowners as a category. Nor could what occurred here be considered a gradual and systematic revaluation by fairly generalized areas of the municipality. To the extent that the decisions in Quinn v. Jersey City, 9 N.J. Tax 128 (Tax Ct. 1987), and Tall Timbers, Inc. v. Vernon Township, 5 N.J. Tax 299 (Tax Ct. 1983), are inconsistent herewith, or may be read to be contrary to our conclusions, we disapprove of those opinions and overrule them.
In view of our determination we need not address the federal civil rights claim under § 1983.
The judgment of the Tax Court is reversed and the judgment of the Passaic County Tax Board for the 1985 assessment is reinstated.
NOTES
[1] The assessment and county board judgment were:

 1985 Assessment Tax Board Judgment
 Land $18,000 $12,000
 Improvement 26,000 19,900
 ________ ________
 Total $44,000 $31,900

[2] The Van Deckers asserted in this appeal the township's failure to pass a resolution to authorize prosecution of the appeal. The issue was not raised below. In any event, West Milford includes in its appendix a copy of resolution 1985-271, dated August 21, 1985, which authorized the Tax Assessor and the Township Attorney to prosecute the appeal.
[3] Apparently, the Van Deckers filed tax appeals for the subsequent two tax years. The Tax Court Judge indicated that these would be determined after the 1985 assessment challenge.

We were advised at oral argument that a 1988 general revaluation in West Milford has been completed.
[4] The Director's average ratio for the West Milford taxing district for the 1985 tax year was 41.46%. The upper limit of the common level range (15% above the average ratio) was 47.68% and the lower limit (15% below the average ratio) was 35.24%.

The assessment/sales ratio is a statistical measure described as the percentage which assessed value bears to the actual sale price. The average of all assessment/sales ratios for properties actually sold is used as a basis for measuring the level at which property is assessed; the extent to which all property is uniformly assessed an effective (equalized) tax rate; valuation; and assessment among taxing districts.
Weighted average assessment/sales ratio is the average percentage derived from dividing aggregate assessed values by aggregate sales prices for a sample of properties, viz, all properties within a district; all properties of a given class; all properties of a given value; and other categories.
A table of equalized valuation lists the average ratio assessed to true value of such real estate in the taxing district. N.J.S.A. 54:1-35.2.
[5] Although the Tax Court Judge had indicated at the hearing and by subsequent letter that the matter would be considered by the full Tax Court, see R. 8:8-6, the matter was heard and decided in the Tax Court by a single judge as a small claims case.
[6] Although we recognize that the issue is somewhat novel in this state, the principle of law relied upon by the Tax Court Judge which would require the taxpayers to show the deliberate and systematic undervaluation of other properties in order to sustain a constitutional deprivation, relying on cases such as Southern Railway Co. v. Watts, 260 U.S. 519, 43 S.Ct. 192, 67 L.Ed. 375 (1923); Kline v. McCloud, 326 S.E.2d 715 (W. Va. 1984); Meyer v. Cuyahoga County Bd. of Review, 58 Ohio St.2d 328, 390 N.E.2d 796 (1979); and Merlino v. Tax Assessors for the Town of North Providence, 114 R.I. 630, 337 A.2d 796 (1975), is neither the most recent nor the proper test for examining the issue of equal and uniform property taxation under state and federal law.
[7] Some sales were considered non-usable transfers, such as transfers between spouses or from parent to offspring where the consideration was stated as "$1.00 and other good and valuable consideration."
[8] Average assessment/sales ratio in New Jersey by Taxing District-Property Class, for the period July 1, 1984 to July 30, 1985.
[9] Moreover, when sales prices slump, turn soft, or decline it is unlikely that the assessor would readjust the value or the assessment.
[10] This becomes clearer if we refer to the Director's studies to compute average ratios.
[11] Presently, the Chapter 123 ratio is a weighted average. The Director is required to average the preceding year's ratio with the average ratio in order to minimize abrupt changes in ratios from year to year and avoid undue influence of inadequate sales samples in any one year. In times of dramatic property value increases, the resulting ratio, effectively based on an average of a two year sampling period commencing 27 months before the assessment date, can be substantially higher than the actual common level existing on the assessment date. See Willingboro Township v. Burlington County Board of Taxation, 62 N.J. 203 (1973).