790 A.2d 171 (2001)
347 N.J. Super. 325
Kathleen SCHUMAR, Plaintiff-Appellant,
v.
BOROUGH OF BERNARDSVILLE, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 2001.
Decided December 27, 2001.
*172 Steven R. Irwin, West Orange, argued the cause for appellant (Mandelbaum & Mandelbaum, attorneys; Mr. Irwin, on the brief).
John R. Pidgeon, Princeton, argued the cause for respondent (Pidgeon & Pidgeon, attorneys; Mr. Pidgeon, of counsel and on the brief).
*173 Before Judges PETRELLA, KESTIN and ALLEY.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiff Kathleen Schumar appeals certain rulings of the Tax Court, including an increased assessment of her residential real property in the Borough of Bernardsville (Borough or Bernardsville) which she purchased in December 1997 for $312,000. Subsequent to the sale, the Borough increased the assessment on the property for 1998 to $308,400, consisting of $114,000 for the land and $194,400 for the improvements. All of the increase was attributed to the house.
Schumar owns property at Block 90, Lot 9 on the tax map of Bernardsville, commonly known as 591 Mine Brook Road, containing a one-family-ranch-style dwelling. When Schumar purchased the property, it had an assessed value of $217,000. The prior owner had purchased the property in 1996 for $210,000.
Schumar filed an appeal of the 1998 assessment to the Somerset County Board of Taxation (Tax Board) on its prescribed form indicating, "assessment too high" in Section 1 of the form entitled "Appeal for Real Property Valuation." The Tax Board affirmed the assessment. Schumar then filed a complaint in the Tax Court, appealing the Tax Board's decision. The case was assigned to the small claims division because the amount of the refund sought was under $2,000. The Tax Court complaint was also a pre-printed form supplied by the court.[1] The form states that additional allegations (beyond the one line provided) may be attached by a rider. In the pre-printed paragraph 2 of that form complaint the plaintiff contested the Tax Board's action "with respect to the assessment... on the ground that the assessment(s) is/are in excess of the true or assessable value of the property."
After several delays,[2] trial was set for October 13, 1999. On September 30, 1999, Schumar, then pro se, mailed and faxed Bernardsville's attorney a letter notice in lieu of subpoena for production of the tax assessor at trial and of certain documentary evidence.[3] On October 5, 1999, the Borough submitted a motion returnable on the trial date to quash the notice in lieu of subpoena. At the morning of trial, Schumar appeared with an attorney and opposed the motion. She also asserted that the assessment was an illegal spot assessment. Bernardsville's attorney, somewhat inaccurately, argued regarding the request for documents that Schumar was seeking reassessment documents going back ten years and correspondence assertedly not "relevant to this small claims appeal." He also argued this was an attempt to circumvent the discovery rules regarding small claims cases and, in any event, was out of time. Further, he stated the municipality did not intend to call the assessor on its case, but rather intended *174 only to present a valuation expert. The tax judge treated the notice to produce as "a subpoena" and quashed it. The judge also limited plaintiff's proofs to valuation only (excluding discrimination), because Schumar had not specifically alleged spot assessments until the day of trial. The trial proceeded that date only on the issue of the property's value. The trial continued on January 5, 2000. Thereafter, the Tax Court upheld Bernardsville's 1998 assessment of $308,400 essentially because the value fell within the Chapter 123[4] corridor of fair market value.
Schumar claims error in the Tax Court's denying her request to amend the complaint to specifically include spot assessment, a form of unconstitutional discrimination, and quashing of the notice in lieu of subpoena. We reverse on both issues.

I.
Schumar alleges that it was error for the Tax Court to prevent her from arguing the revaluation of her property was an illegal spot assessment. It is true that the term spot assessment was not specifically mentioned as an issue until the morning of the trial. Nevertheless, this could hardly have come as a surprise to Bernardsville or its assessor because, on the face of what happened here, that issue should have been obvious to practitioners and assessors familiar with property tax law, if not lay persons, at least after West Milford v. Van Decker, 235 N.J.Super. 1, 561 A.2d 607 (App.Div.1989), aff'd., 120 N.J. 354, 576 A.2d 881 (1990).
A spot assessment, or selective assessment, occurs when a taxpayer or a small class of taxpayers is singled out for reassessment while other taxpayers are not reassessed. Id. at 10, 561 A.2d 607. Spot assessments violate the uniformity provision of Article VIII, section 1(1)(a) of the New Jersey Constitution[5] and the equal protection clause of the Fourteenth Amendment.
A taxpayer wishing to challenge the assessed value of the property may do so on various grounds. One is that the assessment is incorrect and that the property's fair market value is either more or less than the assessed value. FMC Stores Co. v. Borough of Morris Plains, 195 N.J.Super. 373, 385, 479 A.2d 435 (App. Div.1984), aff'd, 100 N.J. 418, 495 A.2d 1313 (1985). Another ground is that the assessment is discriminatory because there is a disparate ratio between the true value of the property and the common level of assessment in the district. Id. at 385-386, 479 A.2d 435. Causes of action based on the second ground are governed by Chapter 123 of the Laws of 1973, codified at N.J.S.A. 54:3-22 and N.J.S.A. 54:51A-6.[6] Yet another ground is that the assessment was due to a spot assessment, a form of unconstitutional discrimination when a property is not uniformly taxed, but is improperly singled out for treatment not accorded all similarly situated properties. Van Decker, supra, 120 *175 N.J. at 361, 576 A.2d 881. It is impermissible to reassess value solely because the property was sold for an amount in excess of the assessed value. Legitimate reasons to revalue the property include increased property value based on new improvements; addition of formerly-exempt property; and reassessment of apartments converted to condominiums. Id. at 362, 576 A.2d 881 (citing Handbook for New Jersey Assessors, New Jersey State Div. of Taxation (1989) sections 902.2, 902.3, and 903.3).
The Tax Court incorrectly prevented Schumar from presenting a claim of spot assessment based on the property's recent sale. While our Court Rules provide in R. 8:3-4(d) that when a claim alleging discrimination is asserted the complaint shall so state, the rules are not intended as a straight-jacket when the thrust of the complaint is an erroneous assessment, particularly in a small claims case (see R. 8:3-4(c)).
In Weyerhaeuser Co. v. Borough of Closter, 190 N.J.Super. 528, 529-530, 464 A.2d 1156 (App.Div.1983), we dealt with the right of a party to amend a complaint to add a claim of discrimination, presumably after a general revaluation of all properties in the taxing district. There, the plaintiff claimed that the tax assessment of its property, as compared to others, was in excess of its true value and asked for a reduction to the actual amount. The municipality counterclaimed, alleging it was discriminated against by the assessed value of the property because it was less than true value. A pretrial order listed valuation and discrimination as factual and legal issues to be determined. The municipality later withdrew its discrimination claim. After the period permitted to amend a pleading, the plaintiff unsuccessfully moved for leave to amend the complaint to add a discrimination claim. Id. at 530-531, 464 A.2d 1156.
We permitted the plaintiff to amend its complaint and allege discrimination, id. at 543, 464 A.2d 1156, noting that the municipality had sought to raise discrimination, and it would have been unfair to preclude the taxpayer to in turn do the same, even though the municipality later withdrew its counterclaim.
We noted in Weyerhaeuser that older cases applied strict rules for amending a tax assessment pleading so that discrimination claims alleging unequal valuation assessments could not be added because they were considered separate causes of action to be pleaded within a prescribed time. Id. at 533, 464 A.2d 1156 (citing Hackensack Water Co. v. Township of North Bergen, 8 N.J.Super. 139, 73 A.2d 597 (App.Div. 1950)). Rules of pleadings have long since been modernized. Discrimination is present in all assessment appeals, and should be procedurally barred only if it is in fact a separate and distinct new cause of action. Id. at 540, 464 A.2d 1156. Other cases have held that Chapter 123 discrimination claims are present in every reassessment claim, whether or not specifically pleaded. Passaic Street Realty Assoc., Inc. v. Garfield City, 13 N.J.Tax 482, 487 (Tax Ct.1994).
Moreover, in the instant case, the prescribed form of small claims complaint (see R. 8:3-4(a) and (c)) contains language that challenges the Tax Board's assessment not only as being in excess of the true value, but also the "assessable value." (Emphasis added). As we view it, a challenge to the assessable value of the property includes a challenge to the unequal assessment between the time of uniform district revaluations by the device of spot assessments of the type disapproved of in Van Decker, supra (120 N.J. 354, 576 A.2d 881), a case rooted in State constitutional law.
*176 Our case law is replete with admonitions that the sole purpose of the courts is to render justice between the parties. Allegro v. Afton Village Corp., 9 N.J. 156, 161, 87 A.2d 430 (1952). Furthermore, our rules are construed "to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable delay." R. 1:1-2. See also R. 8:3-3. Under R. 8:3-8(a), a plaintiff may amend the complaint to include additional causes of action. This may occur, "at any time prior to the completion of the pretrial conference or, if there is no pretrial conference, at any time prior to the receipt of notice of the first date fixed for trial." After the specified period, an amendment may be made for good cause shown or to conform with the evidence. Ibid. Here, there was clearly good cause, if further good cause was needed. Courts endeavor to allow litigants their day in court and some tolerance is accorded in applying rules that are subject to R. 1:1-2.
Finally, a court should be guided by the proofs of the case, and not from the form of the complaint. Weyerhaeuser, supra, 190 N.J.Super. at 542, 464 A.2d 1156. In this action, the proofs proffered by Schumar indicated that a spot assessment may have occurred. The Borough reassessed the value of Schumar's property less than a year after it was sold for an amount greatly in excess of the assessed value. The sparse record does not indicate improvements made to the property that would warrant singling out for a separate update solely of the tax records of recently sold property. Consequently, Schumar should have been permitted to argue and prove a spot assessment.
In sum, the discrimination claim raised by Schumar was present in this matter by virtue of paragraph 2 of the form complaint and Weyerhaeuser, supra, 190 N.J.Super. 528, 464 A.2d 1156. We cannot foresee that the proofs necessary to show compliance or noncompliance with Van Decker, supra, 120 N.J. 354, 576 A.2d 881, would be difficult or complex, or would have caused undue delay.[7] Schumar should have been able to proceed with her claim at trial.

II.
Schumar also argues that it was error for the Tax Court to quash her notice in lieu of subpoena. As noted, the September 30 notice to produce in lieu of subpoena, see R. 1:9-1; 1:9-2; and compare R. 4:18-1, requested production of the tax assessor at the October 13 trial, and all the assessor's records of the assessment for the 591 Mine Brook Road property (the property in question) for the past ten years, the reassessment plan for the Borough for the past five years, the reassessment record for 1998 and all data, files and correspondence for the subject property for the past five years. After Bernardsville moved to quash the notice to produce in lieu of subpoena the discussion focused on the term "subpoena." The tax judge refused to permit the assessor to testify because the Borough was relying on an outside expert, and not the tax assessor, to prove the true value of the property. The request for documentary evidence was quashed because the Tax Court Judge found that in a small claims matter, discovery is limited by R. 8:6-1 (a)(4), and in any event, the requested proofs were not relevant to a pure valuation case, to which the judge had limited the proofs.
*177 A county tax board judgment is presumed to be correct and the taxpayer has the burden of proving the assessment to be erroneous. Pantasote Co. v. City of Passaic, 100 N.J. 408, 412-413, 495 A.2d 1308 (1985). The presumption may be overcome if, for instance, the taxpayer presents evidence showing an improper assessment or establishing that the true value of the property is at variance with a lawful assessment. Ibid. (quoting Aetna Life Insur. Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952)).
Schumar cites Wilshire Oil Co. v. Jefferson Township, 17 N.J.Tax 583 (Tax Ct.1998), for the proposition that the tax assessor must be called at the taxpayer's request. In Wilshire Oil Co. the taxpayer was unable to produce a witness, and then sought to call the tax assessor, who was present in the room. The county tax board refused to allow the taxpayer to present evidence by the assessor and granted the township's motion for dismissal for lack of prosecution. The Tax Court reversed the dismissal, noting that dismissal for lack of prosecution is a drastic remedy that should be granted only in the most egregious circumstances. Id. at 585 (quoting VSH Realty, Inc. v. Harding Township, 291 N.J.Super. 295, 300, 677 A.2d 274 (App.Div.1996)).
In reaching this conclusion, the Wilshire Oil Co. court noted that the taxpayer should have been permitted to call the tax assessor not only because the taxpayer's attorney "could have served the assessor with a subpoena when the hearing commenced," but also because the "board had the inherent authority to require the assessor... to testify" without a subpoena. 17 N.J.Tax at 589. Allowing the assessor to testify "could have satisfied the requirement that a taxpayer's appearance before a county board be more than a sham." Ibid. In the present case, Schumar attempted to require Bernardsville to produce the tax assessor by a notice in lieu of subpoena. Schumar's attorney could also have subpoenaed the assessor at the start of the proceeding or sought the authority of the Tax Court Judge to require him to be called as a witness. Bernardsville may have decided not to rely on the tax assessor's testimony to support the valuation of the property, particularly because Bernardsville focused on establishing true value in 1998. However, that decision should not have prevented Schumar from questioning the assessor's methodology and the basis for appearing to single out her property for increasing the assessment. Schumar could have used the tax assessor's testimony for various relevant purposes, such as attempting to rebut the presumption of validity that attaches to an assessment by demonstrating it to be either inconsistent with an assessment by appropriate evidential standards or that the assessment was created in an illegal or arbitrary fashion.
We emphasize that the Tax Court, as well as a party, has the power to compel the assessor's appearance. No legitimate reason appears in this record to have precluded the taxpayer from calling the assessor to testify as a witness and identify public records and information related to the property in question. For this purpose the tax assessor's testimony was both material, relevant, and necessary.
Furthermore, the documents requested by Schumar should have been produced by the Borough. Although discovery in a small claims matter is limited by R. 8:6-1(a)(4), this rule does not limit a party's offers of proof at trial. It is important to note that the information requested in the notice to produce all appears to be either public records or related to the subject property. As the owner of the property, Schumar had a sufficient interest in examining *178 the assessor's records, particularly in light of the pending tax appeal. Delia v. Kiernan, 119 N.J.Super. 581, 584, 293 A.2d 197 (App.Div.), certif. denied, 62 N.J. 74, 299 A.2d 72 (1972). We further note that it is curious, as it was in Van Decker, supra, 235 N.J.Super. at 5-6, 561 A.2d 607, also a small claims case, id. at 4, 561 A.2d 607, that copies of certain tax records were not provided on request. A subpoena or notice should not even have been necessary. See e.g., N.J.S.A. 47:1A-1; 47:1A-2; 47:1A-4; Delia, supra (119 N.J.Super. 581, 293 A.2d 197). As to public records under the common law, see generally, Beck v. Bluestein, 194 N.J.Super. 247, 259-265, 476 A.2d 842 (App.Div.1984).
Simply stated, Schumar should have been permitted to question the tax assessor at trial as to his methods and reasons for reassessing her property. The documents requested should have been available to the taxpayer whether or not litigation was pending. Consequently, it was error for the Tax Court to quash the notice.

III.
Schumar also challenges the validity of assessment maintenance and the legality of the Borough's staggered reassessment program based on alleged noncompliance with N.J.A.C. 18:12A-1.14. We need not reach those issues in light of our decisions in Points I and II.
We reverse and remand to the Tax Court for further proceedings consistent with this opinion.
NOTES
[1] The Court Rules applicable to the Tax Court requires its clerk to supply a form complaint at the request of litigants. R. 8:3-4(a). The form may be modified by a party to conform to the claim or relief sought in an individual case.
[2] The matter was adjourned several times, apparently in part due to Schumar's initially retaining an attorney who had a conflict with Bernardsville's attorney.
[3] The letter notice sought "all records of assessment on the above property [591 Mine Brook Road] for the last ten years"; Bernardsville's reassessment plan for the last five years; and its reassessment record for 1998. It also sought "all data, files and correspondence for the above property for the last five years."
[4] Chapter 123 of the Laws of 1973 (N.J.S.A. 54:3-22 and N.J.S.A. 54:51A-6).
[5] This provision reads:

Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district.
[6] N.J.S.A. 54:51A-6 was originally N.J.S.A. 54:2-40.4, and the earlier cases cite to this source.
[7] Delay was hardly a factor. There was a lapse of almost three months between the trial days in this matter.