SMALL, P.J.T.C.
In these eases, plaintiffs seek to have the tax assessments on their properties for the year 2001 reduced to the level of the 1999 assessments on the grounds that the 2000 assessments, which were carried forward and are identical to the 2001 assessments, were prohibited spot assessments. For the reasons set forth below, plaintiffs’ requested relief is denied and the 2001 tax assessments are affirmed because there is no proof that they are excessive under the generally exclusive remedy for improper assessments provided by L. 1973 c. 123, commonly referred to as Chapter 123. N.J.S.A. 54:51A-6.
In West Milford Tp. v. Van Decker, 120 N.J. 354, 576 A.2d 881 (1990), our Supreme Court found that a system of revising local property tax assessments of newly purchased property while maintaining the assessments of other properties (the so called “welcome stranger” system of assessment) violated Article VIII, § I, 111 of the New Jersey Constitution, was an illegal “spot *429 assessment,” and would be equitably remedied by rolling back the assessment to its prior level. The Court stated that:
A municipality may revise assessments in years other than years of municipal-wide revaluations for legitimate reasons ____ However, under no circumstances can appraised valuation of property be increased merely because it has been sold.
[120 N.J. at 362, 576 A.2d 881.]
The Court listed some of those circumstances when reassessments of some, but not all, properties were not spot assessments: (1) increased value based on new improvements, New Jersey Division of Taxation, Handbook For New Jersey Assessors § 902.2 (1989); (2) addition of formerly exempt property to the tax list, Id. at 902.3; (3) conversion of apartments to condominiums, Schwam v. Cedar Grove Tp., 228 N.J.Super. 522, 550 A.2d 502 (App.Div.1988); (4) reassessment of apartments based on adoption of vacancy decontrol, Berkley Arms Apartment Corp. v. City of Hackensack, 6 N.J.Tax 260 (Tax 1983); and (5) reassessment of industrial and commercial properties as a class after a showing that as a class they were under-assessed, Frieman v. Randolph Tp., 216 N.J.Super. 507, 524 A.2d 453 (App.Div.1987). Since the 1990 decision in Van Decker, our courts have also found: (1) that property found.to have been improved without notice to the assessor could be reassessed even if it had been sold and the assessor discovered the physical change in the property as a result of the property’s having been listed for sale, Corrado v. Montclair Tp., 18 N.J.Tax 200 (Tax 1999); and (2) that a class of properties, nursing homes, could be reassessed even if there was only one such property in the taxing district, based on the assessor’s study of sales of other nursing homes in neighboring municipalities. Regent Care Ctr. v. Hackensack City, 19 N.J.Tax 455, 457 (Tax 2001), appeal docketed, No. 000849-2002 (App.Div. Mar. 12, 2002).
In Centorino v. Tewksbury Tp., 347 N.J.Super. 256, 789 A.2d 655 (App.Div.2001), certif. den., 172 N.J. 175, 796 A.2d 892 (2002), the Appellate Division held that when, as the result of a sale, the assessor “discovered” that a property was misclassified as a “class 18” rather than a “class 20” property and he subsequently reassessed the property, the assessment was an invalid spot assessment. Schumar v. Bernardsville Bor., 347 N.J.Super. 325, 790 *430 A.2d 171 (App.Div.2001), decided the same day and by the same Appellate Division panel as Centorino, supra, held that a taxpayer whose property was recently pm-chased and subject to a reassessment should have been permitted to subpoena documents and witnesses to prove that the assessment was a spot assessment.
There is a history of decided case law in the Supreme Court of New Jersey and the lower courts dating back to at least the middle of the last century deciding when a specific assessment is a prohibited spot assessment and when “[a] municipality may [have] revised assessments in years other than years of municipal-wide revaluation for legitimate reasons.” West Milford Tp. v. Van Decker, supra, 120 N.J. at 362, 576 A.2d 881. Baldwin Construction Co. v. Essex County Bd. of Taxation, 16 N.J. 329, 108 A.2d 598 (1954).
There is a conflict between constitutionally prohibited spot assessments and the assessor’s obligation under N.J.S.A. 54:4-23 in each year:
... after examination and inquiry, [to] determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 next preceding the date on which the assessor shall complete his assessments.[1]
It is the job of the courts to analyze each factual situation and characterize the assessors’ actions as prohibited or appropriate as each case comes before us.
Our Supreme Court was critical of the Appellate Division’s unintentional dicta restricting the use of Chapter 123 as the exclusive remedy in tax appeal cases in a manner which would encourage “assessors to neglect their duty to keep tax rolls current.” West Milford Tp. v. Van Decker, supra, 120 N.J. at 367-68, 576 A.2d 881 (Pollock, J. concurring). Justice Pollock added “if districts are diligent in updating tax rolls, the Chapter *431 123 ratio provides a useful benchmark of equality.” Id. at 368, 576 A.2d 881
The recent criticism in Centorino v. Tewksbury Tp., supra, of this Court’s conclusion in Corrado, supra, that spot assessing proscribed by Van Decker, supra, was restricted to “welcome stranger” and other assessment revision schemes that were not based on “legitimate” assessment reasons requires a thorough analysis of the facts in this case to determine whether the assessor’s practice falls on the proscribed, spot assessment, or the approved, annual revision, side of the line disapproving or approving assessments which change in a year other than the year of a district-wide revaluation.
In this case, Brick Township conducted a district-wide revaluation in 1992. Bloomfield Tp. v. Essex County Tax Admin’r., 12 N.J.Tax 543 (Tax 1992) (citing Middlesex County Bd. of Taxation v. Sayreville Bor., 133 N.J.Super. 41, 335 A.2d 73 (App.Div.1975)) (holding that the primary purpose of a district-wide revaluation ordered by the county board pursuant to N.J.S.A. 54:3-13 and N.J.S.A. 54:4-47 is to insure intra-municipal equality and uniformity of assessments in compliance with Article VIII, § 1, If 1 of the New Jersey Constitution). A revaluation program seeks to spread the tax burden equitably within a taxing district by appraising each property according to its true value and assessing it based on such value. This is accomplished by the mass appraisal of all real property in the taxing district conducted by an outside professional appraisal or revaluation firm. New Jersey Division of Taxation, Handbook For New Jersey Assessors § 801.1 (1989).
At the time of the 1992 revaluation, the revaluation contractor supplied the Brick Township Assessor with a designation of approximately 600 value control sectors, or neighborhoods. These neighborhoods were judged by the contractor to be areas in which the price of real estate was determined, in part, by the specific neighborhood. The assessor testified that, since the 1992 revaluation, he annually reviewed the ratio of assessments to sales prices within each of the value control sectors. When he determined that the ratio fell outside of the fifteen percent corridor prescribed *432 by Chapter 123, he would adjust the assessments of properties so that they fell within the corridor. He did not reduce or increase the assessments of properties within the value control sectors to the common level. He brought them just below the upper limit of the common level, so that a challenge to the assessment, when measured against the test of Chapter 123, would resist attack. For the three subject properties in these cases, the assessment history from the date of the district-wide revaluation to the date of the challenged assessments is as follows:
Block 31 Lot 22 Block 32 Lot 19.01 Block 31 Lot 24
1992 Land Improvements $364,000 80,300 $322,000 98,700 $350,000
Total $444,300 $420,700 $350,000
1993 Land Improvements $364,000 68.900 No change No change
Total $432,900
1994 No change No change No change
1995 No change No change No change
1996 Land Improvements $301,900 68.900 $292,500 $273,700 98,700
Total $370,800 $292,500 $372,400
1997 Land Improvements No change No change No change No change $273,700 97.400
Total No change No change $371,100
1998 No change No change No change
1999 No change No change No change
2000 Land Improvements $416,000 68.900 $400,000 $368,000 97.400
Total _ $484,900 $400,000 $465,400
*433 2001 No change No change No change
Thus, from 1992, assessments of the subject properties were reduced or remained the same for each property in the years 1993 through 1999. In the year 2000, all of the assessments were increased. No appeal seems to have been filed from those assessments. The assessments for 2001 are identical to those for 2000— they were carried over. The taxpayer has challenged the 2001 assessments, but is really challenging the actions that the assessor took in 2000.
Plaintiffs have, in effect, conceded that their assessments are unassailable under the test of Chapter 123 because they have failed to introduce any evidence as to the value of then- properties. Thus, the legal presumption that the assessment is correct has not been overcome. Pantasote Co. v. City of Passaic, 100 N.J. 408, 413-15, 495 A.2d 1308 (1985) (holding that a presumption of correctness attaches to the original assessment made by the local tax assessor. It can be overcome only by cogent evidence that the quantum of the assessment is incorrect despite inadequacies in the method of assessment). See also Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952). As a matter oí the law of this case, the quantum of the assessment is correct.
There is no evidence that the properties which are the subject of these appeals were sold at any time at or around the assessment date. Thus, the prohibited “welcome stranger” basis for rolling back the assessment prescribed in Van Decker, supra, and factually existing in Centorino v. Tewksbury Tp., supra, and Schumar v. Bernardsville Bor., supra, are not present in these eases.
The plaintiffs’ remaining basis for claiming spot assessment relief is based on a claim that within the meaning of Van Decker there was no “legitimate reason” for revising the assessments on the plaintiffs’ properties.
Plaintiffs have placed hints in the record that the assessor’s methods were flawed, but plaintiffs have not challenged the logic *434 of the assessor in examining the assessment rolls and making the revisions that he made. To summarize:
In each year since the district wide revaluation of 1992, the assessor has:
(1) Examined the ratios of assessments to usable sales in each of approximately 600 neighborhoods designated at the time of the 1992 revaluation.
Plaintiffs assert that those neighborhood lines are no longer valid, but provide no evidence to support that assertion except a not unreasonable belief that neighborhood boundaries do not remain the same for ten years. Thus, there is an intuitive logic to plaintiffs’ argument, but no facts in the record to support that intuition.
(2) Where the assessor has found that, of those properties which sold, the ratio of assessment to fair market value (based on the assessment of properties) within the neighborhood within a given year falls outside of the Chapter 123 corridor (per the Director’s annual sales ratio study), the assessor has adjusted the assessments in that neighborhood to fall within the 15% corridor.
Plaintiffs assert: (a) that there are not enough sales within a given neighborhood to justify this technique (again there are insufficient facts in the record to support such a finding), (b) that the assessor did not have enough time to examine each property in these neighborhoods, although the case law states that the standard to which assessors are held is the correctness of the quantum of the assessment, not the correctness of the method of assessment. Pantasote Co., supra, 100 N.J. at 414-15, 495 A.2d 1308, and (c) that the adjustment to approximately 115% of the common level rather than 100% of the common level is unfair and inherently illegal.
I must conclude that the assessor’s methods of implementing his partial reassessments was less than perfect. He did not have time to examine carefully all assessments; the neighborhoods selected in 1992 may have changed; his determination to use a ratio at the high end of the corridor would seem less than fan- if the average ratio was at the common level. His methods were less than ideal.
Based on the record in this case, the assessments, plaintiffs conceded, would withstand a challenge under the legal tests prescribed by Chapter 123. The assessor’s reasons for examining the rolls and changing assessments were legitimate. He based his examination and changes, not on the recent sales of the subject property, but on the sales prices of neighboring properties. It is not new residents (“strangers”) whose assessments were increased in 2000. Changes in assessments were based on the assessor’s conclusion that prices in certain neighborhoods were changing more rapidly than prices in other neighborhoods and a desire to *435 see that his assessments reflected those changes rather than to ignore them. This was no “welcome stranger.”
In normal challenges to property tax assessments, neither the method used to set the assessment by the assessor nor the method used to revise the assessment by the County Board of Taxation are explored. Schmertz v. Dover Tp., 4 N.J.Tax 145, 151 (Tax 1982) (holding that absent any strong indication arising from the evidence that the quantum of the assessment was far wide of the mark of true value ... deficiencies in the assessment methodology will not impugn the presumption of validity that attaches to the original assessment). See Pantasote, supra, 100 N.J. at 413-14, 495 A.2d 1308. Only the assessors’ and county boards’ ultimate conclusions of value are examined. WCI-Westinghouse v. Edison Tp., 7 N.J. Tax 610, 617 (Tax 1985) (holding that a taxpayer seeking a reduction in the original property tax assessment has the ultimate burden of proof to establish by a preponderance of the evidence that the assessment was incorrect and what the correct assessment should be). In this case, the plaintiff has failed to submit any proof that the assessment is illegal under the mathematical tests prescribed by Chapter 123.
Only where the “reason” for revising the assessments of fewer than all the properties in a district is illegal will the courts roll back the assessment. Assuming that the assessor’s method of implementing his revised assessment was flawed, if the results are flawed they can be corrected by a challenge under the mathematical test of Chapter 123. The assessor’s finding, substantiated by his six hundred neighborhood analysis that prices in different neighborhoods within Brick Township were changing at different rates, is a legitimate basis for his revising assessments within those neighborhoods whose prices changed the most. His line-drawing at neighborhoods where a sales ratio study showed ratios outside the common level range was reasonable.
The only issue to be considered is whether, having reasonably rejected the adequacy of the taxpayer’s evidence, the Tax Court was, under the circumstances, permitted to acknowledge and apply the presumption of validity as to the quantum of the original tax assessment, even though it found the method used by the *436 municipality’s assessor erroneous because it was based in part on the assessment of prior year's.
[Pantasote, supra, 100 N.J. at 414, 495 A.2d 1308 (citation omitted).]
If the Brick Township assessor did not adjust assessments in those neighborhoods, they would have been subject to attack, perhaps not by the property owners in those neighborhoods, but by other property owners whose property values had not appreciated at the same rate.
Spot assessment relief, by mandating a rollback, is extraordinary and should only be invoked in lieu of the exclusive remedy (prescribed by the legislature in Chapter 123) when the assessor has acted illegitimately and unreasonably and not when he deviates from perfect practices. Regent Care Ctr., Inc. v. Hackensack City, 19 N.J.Tax 455, 459 (Tax 1985). West Milford Tp. v. Van Decker, 120 N.J. 354, 361, 576 A.2d 881 (1990).
Although the better practice might have been to make assessments at the common level, and not at the upper end of the common level range pursuant to N.J.S.A. 54:51A-6, perfection is not the standard in real property tax assessment. Rudd v. Cranford Tp., 4 N.J.Tax 236, 249 (Tax 1982) (holding that mathematical precision in valuation of real property for tax purposes is neither required nor attainable). This Court has no authority to revise assessments when they meet the legislatively prescribed standard of Chapter 123, are not prohibited spot assessments, and do not violate some other constitutional principle.
Furthermore, in Van Decker the court discussed the reliance on Quinn v. City of Jersey City, 9 N.J.Tax 128 (Tax 1987) in spot assessment cases. In Quinn the municipality argued that, even if the assessing procedure was improper, as long as the assessment fell within the protective range of Chapter 123 it could not be changed unless the taxpayer could show the assessment was confiscatory or that “severe, extreme or egregious circumstances existed.” Id. at 132. Van Decker, supra, overruled Quinn, supra (a case in which the property’s revised assessment was based in part on a recent sales price), to the extent that it appeared to authorize selective increases in assessments for only those proper *437 ties in a class which had been subject to recent sales. Van Decker, supra, 120 N.J. at 360, 576 A.2d 881. In the cases before me, the plaintiffs’ increased assessments did not result from sales but instead resulted from changed prices in a given neighborhood in which prices were changing at a rate substantially greater than the rate of change of prices in the entire municipality. Consequently, in these cases I can not revise the assessments because the assessments meet the Chapter 123 standard and the assessments were not increased because the plaintiffs’ property had been sold recently. While Chapter 123 does not preclude the Tax Court from providing a remedy for spot assessments, the court can not revise assessments that meet the prescribed standard of Chapter 123, as they do here (because of a lack of proof that they do not), and are not prohibited spot assessments of recently sold properties.
Van Decker, supra, also discusses Baldwin Construction Co. v. Essex County Bd. of Taxation, 16 N.J. 329, 108 A.2d 598 (1954) in which the court held that assessments which had been arbitrarily increased by the county tax board must be reduced in accord with the uniform rate or measure applied to other properties in the taxing district. In Baldwin, supra, the assessments had been arbitrarily increased because the county board did not have the time or information in which to adequately revise, correct, and equalize the assessments. Id. at 333, 108 A.2d 598. Here the plaintiffs’ assessments were not arbitrarily increased but instead were increased in accord with a district-wide examination of differing changes in value in six hundred separate neighborhoods. Thus, the plaintiffs were not singled out for increased assessment but instead were part of a group of taxpayers all of whom were reassessed. M.I. Holdings, Inc. v. City of Jersey City, 12 N.J. Tax 129 (1991).
In VanDecker, supra, the Appellate Division held “there is no justification for separately classifying new homeowners as a category.” 235 N.J.Super. 1, 22, 561 A.2d 607 (App.Div.1989). The court overruled the conclusions in Quinn that restricted the remedy to Chapter 123, 235 N.J.Super, at 15, 561 A.2d 607, but *438 two Justices of the Supreme Court expressed the view that the Appellate Division’s dicta “unintentionally encouraged assessors to neglect their duty to keep tax rolls current.” 120 N.J. 354, 367-68, 576 A.2d 881.
VanDecker, supra, 120 N.J. at 366, 576 A.2d 881, holds that Chapter 123 provides the exclusive remedy in tax appeals unless the assessor’s method for selecting properties to be reassessed is not legitimate. “Welcome stranger,” i.e. selecting recently sold properties for reassessment is not a legitimate classification. Id. at 361, 576 A.2d 881. I find that looking at differing rates of change of prices in geographically defined neighborhoods is a legitimate classification. The thrust of discrimination in Quinn, supra, 9 N.J.Tax 128, was the creation of a disparate class of taxpayers whose properties had been sold which caused those taxpayers to share an unequal portion of the tax burden. Id. at 134. Thus, Quinn, stands for the proposition that it is proper to reassess properties based on changed valuation factors but not if an important factor being considered is the recent sales price. Id. at 133. In the case before me there were no recent sales, therefore Quinn is not controlling. Id. at 134. The decision in Quinn was modified by Van Decker which permits assessors to revise assessments based on changed valuation factors if those factors are something other than sales of the subject property. West Milford Tp. v. Van Decker, supra, 120 N.J. at 362, 576 A.2d 881. Van Decker prohibits the creation of a class of taxpayers whose properties have been sold without indication that the assessor took other factors into account. Id. at 364, 576 A.2d 881. Thus Quinn, supra, 9 N.J. Tax 128, as modified by Van Decker stands for the proposition that a small group of taxpayers may not be singled out for reassessment based on the recent sales of them properties while other properties in the class are not reassessed. Quinn, supra, 9 N.J. Tax at 134. However, Quinn and VanDecker stand for the proposition that the assessor should be alert with respect to changed valuation factors. Id. at 136. Assessors must strive for uniformity of treatment of all properties in their districts. Id. at 137. To that end they should be encouraged to *439 review and revise assessment as frequently as changed circumstances demand and as long as a recent sale is not the principal factor used to review assessments. Ibid. Section 903.3 of the Handbook for New Jersey Assessors requires this practice and states: “if it appears that assessments in one portion of the taxing district are generally too high or too low, the assessor may be able to make adjustments which will bring them into line with the assessments of other properties. In making such adjustments, it is essential that they be applied on an area wide basis.” New Jersey Division of Taxation, Handbook For New Jersey Assessors § 903.3 (1989). This is what the Brick Township assessor did in these cases. Consequently, looking at neighborhoods to revise assessments on an area-wide basis is permissible and is not a prohibited spot assessment.
Plaintiffs’ claims of entitlement to spot assessment relief are not warranted. The factual record in these cases supports a finding that the presumption of correctness of the County Tax Board judgments has not been overcome. The County Board judgments are affirmed.

NJ.S.A. 54:4-23 was amended by L. 2001, c. 101 to impose additional requirements on an assessor wishing to reassess fewer than all properties in a taxing district. The amendment is not applicable to the time period covered by the assessments which are challenged in these cases.