NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

TAX COURT OF NEW JERSEY



**Patrick DeAlmeida**
**Presiding Judge**

R.J. Hughes Justice Complex
P.O. Box 975
25 Market Street
Trenton, New Jersey 08625-0975
(609) 815-2922 x54620

December 12, 2017

Ashley Dorn, Esq.
28 Sand Shore Road
Budd Lake, New Jersey 07828

Jason A. Cherchia, Esq.
O'Donnell McCord, P.C.
15 Mount Kimble Avenue
Morristown, New Jersey 07960

> Re:  Scott Silverberg and Anumaya Phatate v.
> City of Jersey City
> Docket No. 011458-2016

Dear Counsel:

This is the court's opinion with respect to the parties' cross-motions for partial summary judgment. There are two issues before the court. The first is whether plaintiffs established jurisdiction in this court to challenge an added assessment on their real property for tax year 2015. They allege that the added assessment is void for several reasons, including that it is an unconstitutional spot assessment. For the reasons explained more fully below, the court concludes that plaintiffs did not file a timely challenge to the tax year 2015 added assessment and, as a result,

this court lacks jurisdiction to review that assessment. In reaching this conclusion, the court rejects plaintiffs' contention that they should be permitted to pursue their claims because they reasonably relied on statements of a City official lulling them into not filing a timely appeal. The evidence in the motion record unequivocally contradicts plaintiffs' claim to have relied to their detriment on any statement of a City official with respect to the tax year 2015 added assessment.

The second question before the court is whether, in light of its conclusion that it does not have jurisdiction to review the tax year 2015 added assessment, plaintiffs may in the context of their timely challenge to the tax year 2016 assessment on their property, raise claims regarding the validity of the tax year 2015 added assessment. The court answers this question in the affirmative because the tax year 2015 added assessment was incorporated into the tax year 2016 assessment on plaintiffs' property. A portion of the tax year 2016 assessment reflects the amount added in tax year 2015. A legal defect in the tax year 2015 added assessment would invalidate that portion of the tax year 2016 assessment incorporating the value added in the prior tax year. In addition, the court concludes that there are numerous material facts with respect to the validity of the tax year 2015 added assessment that remain in dispute, precluding summary judgment on the validity of that assessment and its inclusion in the tax year 2016 assessment on the subject property.

## I. Procedural History and Findings of Fact

The following findings of fact and conclusions of law are based on the certifications and exhibits submitted in support of the parties' cross-motions.

Plaintiffs Scott Silverberg and Anumaya Phatate are the owners of real property in defendant City of Jersey City. The parcel, designated in the records of the municipality as Block 14103, Lot 2, is commonly known as 223 York Street.

The subject property is a historic home constructed circa 1865 as part of a row of mid-century, Italianate masonry buildings. The residence is an important contributing resource in the Van Vorst Park Historic District, listed on the National, State, and Municipal Registers of Historic Places. For purposes of the present cross-motions, the court need not describe in detail the characteristics of plaintiffs' residence. It is necessary, however, to delve briefly into the assessment history of the subject property to provide the proper context for an analysis of the issues before the court.

Plaintiffs purchased the home in August 2007 for $999,000.

At the start of tax year 2012, the subject property was assessed as follows:

| | |
|---|---|
| Land | $ 60,000 |
| Improvement | $ 45,600 |
| Total | $105,600 |

The Chapter 123 average ratio for Jersey City for tax year 2012 is 31.35%. When the average ratio is applied to the assessment, the implied equalized value of this parcel for tax year 2012 is $336,842, a fraction of what plaintiffs paid for the property five years earlier ($105,600 ÷ .3135 = $336,842).

At the end of October 2012, Super Storm Sandy made landfall in New Jersey. The storm had a devastating effect on portions of Jersey City, both as a result of wind damage and a storm surge that flooded the area of the city's waterfront where the subject is located.

The subject property incurred significant damage in the storm. The extent and nature of the damage, as well as the repairs and reconstruction required at the subject property, are in dispute. At this juncture, it will suffice to say that the damage was severe enough to require plaintiffs and their children to vacate the property for more than two years while repairs and reconstruction took place. In addition, the parties do not dispute that because of the home's historic value, repairs and

3

reconstruction were regulated by the local zoning ordinance, the City's Historic Preservation Standards, and the Secretary of the Interior's Standards and Guidelines for the Treatment of Historic Properties. In addition, replacement of damaged structures at the subject property required approval by the City's Historic Preservation Commission under a Certificate of Appropriateness. Plaintiffs allege that they spent in excess of $500,000 repairing the subject property.

A three-story addition was added to the rear of the subject property at some point prior to its inclusion in a historic district. This addition was damaged in the storm. Because the addition was itself not historic, and did not relate to the subject and the historic district in appearance, massing and materials, plaintiffs were not permitted to reconstruct the addition as it had previously existed. Plaintiffs instead were allowed to construct at the rear of the residence what they allege is a smaller, two-story addition that complied with historic regulations. Plaintiffs claim that the two-story addition did not add value to their home because it is smaller than the structure it replaced. The city disputes this claim. The court makes no factual findings with respect to the original addition, the extent of the damage it suffered in the storm, or the relative size and value of the original addition and the structure plaintiffs were permitted to construct after the storm. Nor does the court make factual findings with respect to the nature, extent, and value of the repairs made on the historic portion of the subject property.

It is undisputed that plaintiffs were required to obtain a building permit to repair and reconstruct the subject property. This is a significant fact because plaintiffs allege that other similarly situated property owners in Jersey City were not required to obtain building permits to make repairs of damage cause by Super Storm Sandy. Plaintiffs allege, among other things, that it is the building permit that caused the tax assessor ultimately to inspect their property and make

4

an added assessment for the value he believes was added by the repairs and reconstruction of the subject property. Plaintiffs allege that other property owners who made similar repairs and reconstruction and who were not required to obtain a building permit were not subjected to added assessments for the value of the changes to their properties. The municipality vigorously disputes these contentions. Again, the court makes no factual findings with respect to the permitting practices in place in Jersey City following Super Storm Sandy.

On December 9, 2014, after completion of the repairs and reconstruction, a construction official issued a Certificate of Occupancy for the subject property. A copy of the Certificate of Occupancy was sent to the municipal tax assessor.

On October 1, 2015, Eduardo Toloza, the municipal tax assessor, notified plaintiffs that an added assessment of $169,400 in improvement value had been placed on the subject property for all twelve months of tax year 2015. The added assessment reflects the tax assessor's judgment of the market value added to the subject property as a result of the repairs and reconstruction after Super Storm Sandy.

The Chapter 123 average ratio for Jersey City for tax year 2015 is 30.02%. When the average ratio is applied to the added assessment, the implied equalized value of the added assessment is $564,290 ($169,400 ÷ .3002 = $564,290).

The assessor's notice informed plaintiffs that

> If you are aggrieved by the assessed value as shown and feel it is in excess of true value, you have the right to file an appeal on or before December 1, 2015.

The notice provided the address of the Hudson County Board of Taxation.

On November 3, 2015, plaintiffs emailed a Jersey City official. The communication provided, in relevant part,

Last month my wife and I received a tax reassessment notice from Eduardo Toloza citing that our taxes would be increase (sic) **almost 3X** from $7.9K to $20.6K overnight. That's more then (sic) any reasonable JC family can handle.

The reassessment had been triggered by Hurricane Sandy REPAIR work.

We had severe damage to our home from Hurricane Sandy causing us to relocate for almost 2 years while we tore down a severely damaged pre-existing 3-story addition and replaced it with a 2-story addition to meet Dan Wrieden's historic requirements at enormous cost. We needed to replace the addition as it was structurally compromised from the storm and City Historic Preservation wouldn't let us replace the 1980's vintage addition as it was. No material square footage was added, in fact it was rebuilt to a lesser height. We currently have an SBA Disaster Loan of $200,000. and depleted our savings to rebuild. Following the storm it was literally a situation of give the keys back to the bank or take on more debt.

. . . and then the City's administration triples our taxes after doing Hurricane Sandy repair work. We are paralyzed by this City action.

\* \* \*

We look forward to hearing some constructive feedback on this.

[(emphasis in original).]

On November 4, 2015, Steven M. Fulop, Mayor of Jersey City, responded to plaintiffs' email with an email communication of his own. He stated:

We will get this resolved. Mark the chief of staff is meeting with Ed on this issue and we can hopefully get fixed (sic). Can you reach out to Mark.

On November 30, 2015, plaintiffs filed a Petition of Appeal with the Hudson County Board of Taxation challenging the tax year 2015 added assessment on the subject property.

On December 1, 2015, the City also filed a Petition of Appeal with the Hudson County Board of Taxation challenging the tax year 2015 added assessment on the subject property. The

6

cover letter accompanying the appeal, signed by the City's counsel, indicates that "Taxpayer" was provided a copy.

On December 17, 2015, while both plaintiffs' appeal and the City's appeal of the tax year 2015 added assessment were pending before the county board of taxation, Mayor Fulop again emailed plaintiffs. The communication provided:

> Just wanted to bring to your attention the article today regarding the city proactively appealing taxes per the email below and I wanted to close the loop. Thanks for bringing this to our attention initially as it impacted 450 other households in the city and caused us to act. While the system is not perfect we figured best to adjust everyone in the appeal till we resolve shortly the lawsuit on the reval overall and are able to do a more thoughtful comprehensive assessment.

On December 29, 2015, the county board of taxation issued a Judgment dismissing the City's Petition of Appeal. The Judgment includes that notation "lack of standing."

On January 15, 2016, the county board of taxation issued a Judgment in plaintiffs' appeal affirming the tax year 2015 added assessment. The Judgment code indicates that plaintiffs waived a hearing before the county board. The back of the Judgment explains plaintiffs' right to appeal to this court within 45 days of the date of mailing of the Judgment.

Plaintiffs did not file an appeal in this court by that statutory deadline.[1]

The tax year 2015 added assessment was incorporated in the assessment placed on the subject property for tax year 2016. The subject property was assessed as follows for tax year 2016:

| | |
|---|---|
| Land | $ 60,000 |
| Improvement | $215,000 |
| Total | $275,000 |

---

[1] The City also did not file an appeal from the county board Judgment with respect to its challenge to the tax year 2015 added assessment.

7

The Chapter 123 average ratio for Jersey City for tax year 2016 is 27.63%. When the average ratio is applied to the assessment, the implied equalized value of this parcel for tax year 2016 is $995,295 ($275,000 ÷ .2763 = $995,295).

On March 25, 2016, plaintiffs again emailed Mayor Fulop. That communication provided, in relevant part, as follows:

> As you are aware, our taxes were Spot Assessed following Hurricane Sandy repair work causing our taxes to go from $7.9K to $20.6K late last year.
>
> My family and neighbors didn't forget the day you came by York Street to help clean-up debris following the Hurricane. We know that you are committed to the community but we can't help but feel unreasonably targeted. Is it just that our taxes go up almost 3X overnight to do (sic) storm repair work while none of our neighbors have had a similar assessment burden despite their having done repair work? A simple search of area taxes reveals the undeniable inequity of what has happened. We had had (sic) hundreds of thousands of dollars of repair work and had to take on an SBA Disaster Loan.
>
> We understand your efforts to avoid a city wide reval but allowing Spot Assessments of targeted repaired properties immediately adjacent to new tax free development built during the same period feels completely unjust.
>
> <u>We would request that the City's Assessor's office reverse the Spot Assessment that was conducted for 223 York Street hurricane repair work and trust that your office can facilitate this process.</u>
>
> [(emphasis in original).]

On March 26, 2016, Mayor Fulop responded to plaintiffs by email as follows:

> The assessments for improvements are done by state law. It is something that we follow. With regards tax free development, I am not sure what you mean as every single development pays a pilot payment to the city which in most cases is significantly higher than the median taxes that is (sic) paid in jc.

8

On March 28, 2016, plaintiffs responded to the Mayor by email, in relevant part, as follows:

> Thank you for your reply below. In your view would it be a waste of time for us to file another appeal by the April 1st deadline? Our position is that the assessor has unevenly assessing (sic) property that suffered damage following the Hurricane.
>
>     *   *   *
>
> We're just not comfortable with the injustice with the targeted spot assessment. With all that said we fully understand the bind you and your administration are in and are full supporters of your leadership for Jersey City. Keep it up.

On March 31, 2016, plaintiffs filed a Petition of Appeal with the Hudson County Board of Taxation challenging the tax year 2016 assessment on the subject property.

On June 21, 2016, the county board issued a Judgment affirming the tax year 2016 assessment on the subject property. The Judgment code indicates that plaintiffs waived the county board hearing.

On August 8, 2016, plaintiffs filed a Complaint in this court challenging the county board Judgment for tax year 2016. The Complaint is signed by an attorney and alleges that plaintiffs request a reduction of the "increase in the assessed value of their primary residence between 2015 and 2016." The Complaint contains allegations that mirror the assertions made in plaintiffs' emails regarding the tax year 2015 added assessment. Plaintiffs' counsel has acknowledged on the record that plaintiffs seek to challenge in this court only the tax year 2015 added assessment and the inclusion in the tax year 2016 assessment of the amount attributable to the tax year 2015 added assessment. They do not allege that the tax year 2016 assessment does not accurately reflect the true market value of the subject property. Generally, the remedy for an illegal spot assessment is to roll back the assessment to the amount before the illegal increase. Township of West Milford v. Van Decker, 120 N.J. 354, 365 (1990).

9

On August 29, 2017, plaintiffs moved for summary judgment in their favor. Plaintiffs' moving papers are perplexing. In addition to setting forth various legal arguments with respect to the validity of the tax year 2015 added assessment, plaintiffs argue:

> Plaintiffs have been directly and repeatedly advised by the Mayor of Jersey City that this astronomical increase in Plaintiffs' assessment was a mistake, and was to be corrected as soon as possible, in order to spare Plaintiffs the additional extreme and unexpected financial burden of this unjust added assessment. Therefore, since Plaintiffs' failure to file a 2015 Added Assessment appeal by the relevant deadline was in reliance on these promises by the City that the issue would be corrected, Plaintiffs submit that the City should now be estopped from asserting the December 1, 2015 filing deadline for an Added Assessment appeal as a defense in this matter.

[Pb 8/29/17 pp. 2-3.]

An entire heading of plaintiffs' brief is devoted to this point, expressly relying on the statements in the Mayor's November 4, 2015 email as the reason why they did not file an appeal of the tax year 2015 added assessment by the December 1, 2015 filing deadline.

As explained in detail above, however, plaintiffs did file an appeal of the tax year 2015 added assessment by the December 1, 2015 filing deadline. The county board issued a Judgment affirming the tax year 2015 added assessment, noting that plaintiffs had waived a hearing.

On September 19, 2017, the City cross-moved for partial summary judgment in its favor. The City seeks a determination by the court that the only issue over which the court has jurisdiction is whether the tax year 2016 assessment on the subject property reflects the property's true market value. The City argues that although plaintiffs did file an appeal of the tax year 2015 added assessment with the county board of taxation, they failed to file a timely appeal from the board's Judgment in this court. Thus, the City argues, the court lacks jurisdiction to review the tax year 2015 added assessment. In addition, the City argues that plaintiffs' timely challenge to the tax

10

year 2016 assessment on the property must be limited to a determination of whether the assessment accurately reflects the property's true market value. According to the City, any legal flaw in the tax year 2015 added assessment is not relevant to the validity of the tax year 2016 assessment.

In her September 26, 2017, reply brief plaintiffs' counsel states that she "was unaware prior to receipt of the city's Cross-Motion for Summary Judgment that a 2015 added assessment appeal had in fact been filed by my clients, and denied by the County Board of Taxation." (Pb 9/26/17 p. 2). Plaintiffs' counsel also states that when she filed plaintiffs' motion that the City had also filed a challenge to the tax year 2015 added assessment "in line with promises made to my clients by the Jersey City mayor, that this mistake on the city's part was to be fixed." (Pb 9/26/17 p. 3).

In other words, the entire premise of plaintiffs' argument in their initial motion brief that equitable considerations should permit them to file a late challenge to the tax year 2015 added assessment – that they missed the December 1, 2015 filing deadline to challenge the assessment because they relied on the Mayor's unfulfilled promise to try to correct the assessment – was baseless.

Plaintiffs' counsel attempts to explain how her clients, who submitted a certification in support of the motion, could have permitted this factually baseless argument to be made on their behalves. Counsel states that plaintiffs "were unaware of the subtle procedural differences between having failed to file a 2015 Added Assessment appeal, and having failed to appeal the outcome of same to the state Tax Court level." (Pb 9/26/17 p. 2). While this argument is, on its surface, plausible, it does not explain why there is no mention in plaintiffs' moving papers of plaintiffs' having filed a county board appeal, or of the county board having issued a Judgment affirming the 2015 added assessment. If plaintiffs thought they were seeking relief from failing to file an appeal in this court from the county board Judgment, then the date on which the county

11

board Judgment was mailed to plaintiffs would have been critical to their argument, as the mailing date of a county board Judgment is the starting point to calculate the statutory filing deadline for this court. Moreover, the only filing deadline mentioned in plaintiffs' brief is December 1, 2015, the date applicable to appeals to the county board, and not the March 3, 2016, deadline applicable to the filing of an appeal in this court from the county board's Judgment. There is no credible way to read plaintiffs' initial brief other than that they represented to the court, through counsel, that they did not file an appeal in the county board of taxation by December 1, 2015 because of representations made to them by Mayor Fulop.

Plaintiffs' counsel was retained by her clients in February 2016, during the period in which plaintiffs could have filed an appeal of the county board Judgment. According to counsel, plaintiffs failed to mention that they had filed a county board appeal, that the appeal had been resolved, and that the deadline for filing an appeal to this court had not yet expired. Nor did plaintiffs give their counsel a copy of the county board Petition of Appeal or Judgment.[2]

Even more unsettling is an argument presented in plaintiffs' reply brief, the contents of which were certified by plaintiffs. Plaintiffs allege that they did not attend the county board hearing on their appeal because

> they were advised by . . . counsel for the city, during a telephone conversation on or about January 7, 2016, that it would NOT be necessary for them to attend this hearing. In fact, Plaintiffs were advised by [the City's counsel] that it would actually be a bad idea for them to attend this hearing, with the justification for this recommendation being an assumption that Plaintiffs would be

---

[2] Apparently, plaintiffs' counsel did not seek discovery from the City prior to moving for summary judgment. Surely, even a rudimentary request for relevant documents would have resulted in the production of a copy of plaintiffs' Petition of Appeal at the county board, the county board's Judgment, and copies of the documents relating to the City's appeal.

viewed as wealthy waterfront residents and that this could harm Plaintiffs' case.

[Pb 9/26/17 p. 3.]

The credibility of this representation is questionable. Plaintiffs' initial motion papers are predicated in large part on statements by representatives of the City with respect to the tax year 2015 added assessment. Yet, there is no mention in that brief of what plaintiffs purport to be a statement by the City's attorney that persuaded them not to attend the county board hearing on their appeal of the added assessment. It was only after the City's opposition brief demonstrated that plaintiffs had, in fact, filed an appeal of the tax year 2015 added assessment by the December 1, 2015 deadline, contrary to the very premise of their promissory estoppel argument, that plaintiffs, for the first time, reported that the City's attorney lulled them into not attending the hearing on their appeal. It seems logical that if the City's attorney had made such a representation to plaintiffs they would have ensured that their counsel included the statement in their initial brief.

## II. Conclusions of Law

### A. Jurisdiction to Review the Tax Year 2015 Added Assessment.

The "Tax Court is vested with limited jurisdiction" defined by statute. McMahon v. City of Newark, 195 N.J. 526, 546 (2008)(citing N.J.S.A. 2B:13-2 and Union City Assocs. v. City of Union City, 115 N.J. 12, 23 (1989)). "'The right to appeal a real property assessment is statutory, and the appellant is required to comply with all applicable statutory requirements.'" Macleod v. City of Hoboken, 330 N.J. Super. 502, 505 (App. Div. 2000)(quoting F.M.C. Stores Co. v. Borough of Morris Plains, 195 N.J. Super. 373, 381 (App. Div. 1984), aff'd, 100 N.J. 418 (1985)). The statutory scheme establishing this court's jurisdiction is "one with which continuing strict and unerring compliance must be observed . . . ." McMahon, supra, 195 N.J. at 543.

13

Compliance with the statutory filing deadlines is essential to establish judicial jurisdiction to review an assessment. As our Supreme Court explained, "failure to file a timely appeal is a fatal jurisdictional defect." F.M.C. Stores, supra, 100 N.J. at 425. A failure to file a timely Complaint divests this court of jurisdiction even in the absence of harm to the defendant municipality. Lawrenceville Garden Apartments v. Township of Lawrence, 14 N.J. Tax 285 (App. Div. 1994). As Judge Brennan recently held, a taxpayer's failure to file a timely appeal "is a fatal flaw, denying this court jurisdiction to provide relief, despite the strength of the . . . claim" asserted by the taxpayer. Positive Health Care, Inc. v. City of Newark, 29 N.J Tax 213, 219 (Tax 2016), appeal pending.

N.J.S.A. 54:51A-9 provides "a complaint seeking review of adjudication or judgment of the county board of taxation shall be filed within 45 days of the service of the judgment." R. 8:4-1(a)(2) provides that service of the judgment of a county board of taxation, when by mail, shall be deemed complete as of the date the judgment is mailed, subject to the provisions of R. 1:3-3. According to R. 1:3-3, "[w]hen service of a notice or paper is made by ordinary mail, and a rule or court order allows the party served a period of time after the service thereof within which to take some action, 3 days shall be added to the period."

The county board of taxation mailed to plaintiffs a Judgment affirming the tax year 2015 added assessment on January 15, 2016. Forty-five days from January 15, 2016 was February 29, 2016. Because the Judgment was mailed, three additional days are added to the filing period. The deadline for filing a Complaint with this court in plaintiffs' appeal of the 2015 added assessment, therefore, was March 3, 2016. Plaintiffs did not file a Complaint on or before that deadline.

Plaintiffs allege that they challenged the tax year 2015 added assessment in the Complaint they filed on August 5, 2016 after issuance of the county board Judgment in plaintiffs' challenge

to the tax year 2016 assessment. They argue that the late filing of their Complaint should be excused because plaintiffs reasonably relied to their detriment on statements by the Jersey City Mayor that the tax year 2015 added assessment would be changed without the need for plaintiffs to file an appeal.

In support of this argument, plaintiffs rely on the doctrine of promissory estoppel. Four elements must be proven to warrant application of promissory estoppel:

> (1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise; and (4) detriment of a definitive and substantial nature must be incurred in reliance on the promise.
>
> [Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc., 307 N.J. Super. 461, 469 (App. Div. 1998)(quoting The Malaker Corp. Stockholders v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 479 (App. Div. 1978)).]

Estoppel against public officials is rarely applied. See Black Whale, Inc. v. Director, Div. of Taxation, 15 N.J. Tax 338, 355 (Tax 1995).

The promise upon which plaintiffs build their estoppel argument is contained in the Mayor's November 4, 2015 email:

> We will get this resolved. Mark the chief of staff is meeting with Ed on this issue and we can hopefully get fixed (sic).

Plaintiffs have established none of the factors necessary to warrant promissory estoppel. The Mayor's statement is not a "clear and definite promise." He stated that the City "hopefully" could get "this resolved" or "fixed." At best, the Mayor indicated that City officials would consider the issues raised by plaintiffs regarding their tax year 2015 added assessment and would attempt to correct any errors in the assessment. More importantly, the Mayor's statement does not in any

way suggest that plaintiffs refrain from filing an appeal with the county board of taxation to challenge the assessment.

Additionally, plaintiff have not proved that they relied on the Mayor's statement to their detriment. Shortly after the Mayor's email, plaintiffs filed a Petition of Appeal with the county board of taxation challenging the tax year 2015 added assessment. Moreover, the Mayor arguably fulfilled any promise he made to plaintiffs in the November 4, 2015 email when, shortly after the email, the City also filed a Petition of Appeal challenging the added assessment with the county board of taxation. The Mayor brought the City's appeal to plaintiffs' attention in a December 17, 2015 email. It was clear at that point that the City had taken the steps it had decided were necessary to "resolve" or "fix" the issues raised by plaintiffs with respect to the added assessment.

Nor have plaintiffs established that their failure to file a timely appeal in this court from the county board's Judgment with respect to the tax year 2015 added assessment was the result of their reasonable reliance on a statement by a City official. Plaintiffs contacted the Mayor after the county board issued its Judgment affirming the tax year 2015 added assessment, and after the deadline for filing an appeal from that Judgment had passed. Although plaintiff requested that the tax assessor "reverse" the added assessment, the Mayor's response was anything but a promise that such action would be taken. To the contrary, in his March 26, 2016 email to plaintiffs, the Mayor stated that "assessment for improvements are done by state law. It is something that we follow." There is nothing in the Mayor's response even remotely approaching a promise to plaintiffs to alter the tax year 2015 added assessment or urging plaintiffs to refrain from filing an appeal with this court from the county board's Judgment.

More importantly, by February 2016, plaintiffs were represented by counsel. At that point, prior to the filing deadline for an appeal from the county board Judgment, it was imperative on

16

counsel to ascertain an accurate procedural history and give advice to plaintiffs with respect to whether to file an appeal to this court. Counsel reports to the court that when she was retained by plaintiffs they failed to make her aware of their challenge to the tax year 2015 added assessment before the county board of taxation and, apparently, had not provided her with a copy of the county board's Judgment.

Plaintiffs profess to have conflated an appeal from the county board's Judgment for tax year 2015 with the need to file an appeal from the tax year 2016 assessment on the subject property. While one could easily imagine the average taxpayer overlooking the procedural and substantive niceties of local property tax appeals, it is hard to understand how plaintiffs could retain counsel in this matter and not inform her that in the past two months they filed a Petition of Appeal with the county board taxation, received a Judgment from the county board, and, according to plaintiffs, were told by the City's attorney not to attend their county board hearing. More surprising is that plaintiffs could acquiesce in the filing of a motion brief with this court that contains not a single word about their county board appeal or what they claim to have been an questionable statement by the City's attorney.

That alleged statement has not been proven and the court makes no determination regarding what may or may not have been said to plaintiffs by the City's attorney with regard to the county board appeal. It will suffice for the court to conclude that even if plaintiffs relied on a statement by the City's attorney when deciding not to attend the county board hearing, promissory estoppel would not apply. It is not plaintiffs' failure to attend the county board hearing, but their failure to file a timely appeal in this court that is at issue. The county board Judgment is marked with Judgment code 6B, indicating that the Complaint was dismissed without prejudice because plaintiffs waived a hearing. This does not preclude the filing of a Complaint with this court from

17

the county board Judgment.  See N.J.S.A. 54:51A-1(c)("This provision does not preclude a review by the Tax Court in the event that the appeal was 'dismissed without prejudice' by the county board of taxation.").

Having failed to file a timely appeal of the county board's Judgment, plaintiffs have not established jurisdiction in this court to review the tax year 2015 added assessment on their property.

B.    Whether Plaintiffs May Challenge the Validity of the
       Tax Year 2015 Added Assessment in their Tax Year 2016 Appeal.

There is no dispute that plaintiffs filed a timely challenge to the tax year 2016 assessment on their property.  They do not claim that the tax year 2016 assessment exceeds the true market value of the property.  Plaintiff allege, however, that the tax year 2015 added assessment was incorporated in the tax year 2016 assessment, and, to the extent that the tax year 2015 added assessment is void, it must be removed from the tax year 2016 assessment.

Plaintiffs' argument is not novel.  In Shippee v. Township of Brick, 20 N.J. Tax 427, 428 (Tax 2002), the property owners sought

> to have the tax assessments on their properties for tax year 2001 reduced to the level of the 1999 assessments on the grounds that the 2000 assessments, which were carried forward and are identical to the 2001 assessments, were prohibited spot assessments.

Although the assessments were increased from their 1999 values in 2000, no appeals were filed with respect to tax year 2000.  Id. at 433.  The first time that the increase was challenged was in tax year 2001, where the assessments were identical to those in 2000.  Ibid.  As the court explained, "[t]he taxpayer has challenged the 2001 assessments, but is really challenging the actions that the assessor took in 2000."  Ibid.  This is substantially equivalent to the case before the court, where

18

plaintiffs filed a timely appeal of the tax year 2016 assessment on their property, but are really challenging the actions of the assessor in tax year 2015.

With respect to tax year 2001, the taxpayers in Shippee "conceded that their assessments are unassailable under the test of Chapter 123" and introduced evidence addressed only at their claim of an illegal spot assessment in 2000. Ibid. The court analyzed whether the assessor exceeded his authority in 2000 when he increased the assessment on the taxpayer's property to determine whether the tax year 2001 assessment would be rolled back to the 1999 assessed value. A similar set of facts was present in Regent Care Center, Inc. v. City of Hackensack, 19 N.J. Tax 455, 457 n.1 (Tax 2001), aff'd, 362 N.J. Super. 403 (App. Div. 2003), where the taxpayer alleged an unconstitutional spot assessment in tax year 1997 was carried forward to the tax year 1998 assessment before this court. Valuation also was not an issue in that matter. Ibid.

In light of these precedents, the City's motion to limit plaintiffs' tax year 2016 appeal to the question of whether the tax year 2016 assessment reflects the subject property's true market value is denied. Plaintiffs may pursue their claim that because of flaws in the tax year 2015 added assessment, the tax year 2016 assessment should be rolled back to the assessed value in place prior to the tax year 2015 added assessment.

C.    Whether Either Party is Entitled to Summary Judgment with Respect to
       the Validity of the Tax Year 2015 Added Assessment.

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2. In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995), our Supreme Court established the standard for summary judgment as follows:

[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

The court finds that numerous material facts with respect to the validity of the tax year 2015 added assessment remain in dispute. As noted above, the parties dispute the extent and nature of the repairs and reconstruction undertaken by plaintiffs at the subject property. They also dispute the construction permitting process in place in Jersey City after Super Storm Sandy, as well as the steps taken by the City's tax assessor to inspect properties repaired and reconstructed after the storm. Judge Small explained in Shippee, supra, that when deciding whether an increase is an invalid spot assessment:

It is the job of the courts to analyze each factual situation and characterize the assessors' actions as prohibited or appropriate as each case comes before us.

[20 N.J Tax at 430.]

In order to fulfill that responsibility here, it will be necessary to make a number of fact findings that cannot be made on the present motion record.[3]

Very truly yours,

/s/Hon. Patrick DeAlmeida, P.J.T.C.

---

[3]    Plaintiffs seek relief with respect to tax year 2017. They have not, however, filed an appeal with respect to tax year 2017. All real property in the State is assessed yearly. N.J.S.A. 54:4-23. Each tax year is considered separately and in order to obtain relief from this court a taxpayer must file a timely Complaint for each tax year. See Aperion Enterprises, Inc. v. Borough of Fair Lawn, 25 N.J. Tax 70, 86 (Tax 2009). One exception to this rule is the Freeze Act, N.J.S.A. 54:51A-8, which allows the court to grant relief, in certain circumstances, for tax years for which no appeal has been filed. The court offers no opinion with respect to whether Freeze Act relief would be available to plaintiffs for tax year 2017 were they to be successful with their tax year 2016 claims.